CASE 102—ACTION TO SET ASIDE DEED AND RECOVER LAND—JAN. 30.

# Todd, &c. v. Gentry, &c.

### APPEAL FROM MADISON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. REVERSED.

WILLS—DISINHERITING HEIR WITHOUT DEVISING PROPERTY TO OTHERS.

Held:    A will devising two dollars in gold to the father of testator, his only heir, with the direction that there be inscribed on it by some jeweler that it was the father's interest in testator's estate, and then devising specific property to testator's sister did not disinherit the father as to property not mentioned in the will, as a man can disinherit his heir only by giving his estate to some one else. Tabor v. McIntire, 79 Ky., 505, overruled.

BURNAM & MOBERLY, FOR APPELLANTS.

> Madison Todd, Jr., died unmarried and childless, leaving a will in which he devised to Minnie Gentry a tract of land known as his Tudor land and his eighth interest in his mother's estate. He was the equitable owner of fifty-five acres of land in Madison county which he had bought of Smith & Evans.
>
> In the first clause he gives to his father, who was then living, $2 in gold, and to each of his father's children $1 in gold. No allusion whatever is made in the will to the fifty-five acre tract of land in Madison county.

1. This will contains no residuary clause. The testator does not dispose of all his estate, and our contention is that the father of the testator, who was then living, being his sole heir at law, inherited all the estate which was not devised to others by the will. Leonard v. Enochs, 92 Ky., 186; Phillips v. Phillips, Admr., 93 Ky., 498.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The will of Madison Todd, Jr., which was duly probated after his death, is in these words: "I this day make a will of my property as follows: I give to my father, D. F. Todd, $2.00 in gold; and to his six children, Nannie, Julia, Sallie, William, Maggie, and Rutherford Todd, $1.00

each in gold; and it is to be prescribed on it, by some jeweler, it is my interest in M. Todd's estate, and said jeweler is to be paid out of my estate, and this dollar in gold is to be defaced so it can't be passed as currency any longer. I also give to Minnie B. Gentry and heirs my one-eighth interest in my mother's estate, which must be equally divided in the land, and the land is not to be sold by her. My father's $2.00 in gold is to be fixed like his six children, and at his death it is to be given to Minnie B. Gentry. I also want my just and honest debts paid. I want the Tudor land, which I now own, to be rented, or sold, if I am in debt so renting it won't pay my debts. I don't owe my sister Minnie Gentry anything, or her four sisters or two brothers anything, or my father either. They are in debt to me in large sums, and if it can be collected I give it to Minnie B. Gentry. I want to be buried by the side of my mother, and the tombstone is to be put up at the cost of all the cash that is on hand after my debts are paid, and, if none are on hand, I want the Tudor land sold, if it can't be rented, and the rent of it for two years shall be the cost of the tombstones. I will leave this with the county judge, and he shall wind up my business. I have no debts against me now, only where notes exist, and one for $25.00 to J. C. Chenault. The Tudor land, if not sold, must be, at Minnie Gentry's death, given to her heirs. In three years after my death, if no tombstones are not put up over my mother, they must be done at my expense, and prescribed on them, so this my last request, this the 25th day of February, 1893. Madison Todd, Jr. Witness: David Chenault, Jr., T. A. Chenault."

In addition to the one-eighth interest in his mother's estate and the "Tudor land," referred to in the will, the

testator owned at his death another tract of about fifty-five acres, which he had purchased, but which had not been conveyed to him, a small balance of the purchase money being unpaid. For this tract he held a title bond. His father, D. F. Todd, survived him, and was his heir at law. The question involved in this case is whether the fifty-five acre tract passed under the will, or to his father, D. F. Todd, as his heir at law, no allusion being made to it in the will. The court below seems to have held that by implication all the estate of the testator passed under the will to Minnie B. Gentry, his remaining sister, who was not excluded by it. The testator was unmarried. The will contains no residuary clause, and there is absolutely nothing in it devising the fifty-five-acre tract to her, or showing any intention on the part of the testator that she should have it. It does appear, however, from the will, that the testator devised to his father and six of his brothers and sisters certain gold coins, and directed that it should have inscribed on it by some jeweler that it was their interest in the estate, and that at his father's death his gold coin, which was to be defaced so that it could not be passed as currency, was to be given to Minnie B. Gentry. The question, therefore, arises, does this expression of an intention to limit his father's share of his estate to two dollars exclude his father, as heir at law, from all interest in property which was not disposed of by the will?

In Clarkson v. Clarkson, 8 Bush, 658, this court said: "Mr. Jarman's sixth rule of construction is 'that mere negative words are not sufficient to exclude the heir or next of kin; there must be an actual gift to some other definite object.' This rule is in accord with the spirit of the law of this State regulating the testamentary right."

· In Philipps v. Philipps, 93 Ky., 498, (20 S. W., 541), the testator devised to his five daughters $200 each, and added: "All I intend for my five daughters to have of my estate." He died intestate as to a part of his estate, and it was held that the daughters could only be excluded by a disposition of his whole estate.

In 29 Am. & Eng. Enc. Law, p. 510, it is said: "Interests undisposed of in realty and personalty pass to the heir at law or next of kin, as the case may be, who can only be excluded by express words or by plain and necessary implication. Directions excluding them from any share in the testator's property will, as a general rule, be taken to have been inserted only for the purpose of the dispositions made by the will, and will not exclude them from taking property undisposed of."

These conclusions are supported by a great many authorities. In Boisseau v. Aldridge, 5 Leigh, 222, (27 Am. Dec. 590), the following paper had been duly probated as the will of the testator: "Not having made any will to dispose of my property, and two of my sisters marrying contrary to my wish, should I not make one I wish this instrument to prevent either of their husbands from having one cent of my estate,—say the husbands of my two sisters, Martha Aldridge and Dorothy Aldridge,—nor either of them to have one cent, unless they should survive their husbands. In that case I leave them, to be paid out of the collection of any of my money, $500 each. Given under my hand and seal this 27th August, 1829." The testator left a considerable estate and several brothers and sisters. The two sisters named in the will sued for their share of the estate, and it was held that they were entitled to it. Judge Brooke said: "To give to a testator power to disinherit his heirs whom the law has appointed to

take the estate, unless he devises it to some other person,
would be, in effect, to give him authority to repeal the
statutes of descent and distribution. That a testator
may disinherit his heirs by giving his estate to somebody
else can not be doubted; but if, in every case in which
he intends to exclude his heirs from the inheritance, it
is to be implied from that alone that he devises his es-
tate to those who (some of his heirs being excluded) would
take the inheritance, the principle that to disinherit his
heirs he must devise his estate to somebody else would
be of no consequence, because every exclusion of his heirs
would be a devise to somebody else." In this case Judge
Tucker dissented, and one of the judges who concurred
in the judgment in some measure rested his opinion on
the peculiar language of the instrument.

But in the subsequent case of Coffman v. Coffman, 85
Va., 459, (8 S. E., 672), (2 L. R. A., 848), the entire court
adopted the view of Judge Brooke. The will in that case
was in these words: "I, Hiram Coffman, of Rockingham
county, State of Virginia, do make and ordain this to be
my last will and testament, hereby revoking all other wills
heretofore made by me. It is my will that my son Wil-
liam H. Coffman be excluded from all of my estate at my
death, and have no heirship in the same, he having be-
come the heir to his mother's interest in her father's es-
tate; and I, his guardian, having paid him, and am now
about to make a final settlement with him, which will
make as much to him, and probably more, than my estate
will pay to each of my other legal heirs. In witness of
this, being my last will and testament, I hereunto set my
hand, and annex my seal, this 10th day of March, 1877."
The court said: "Now, this paper is certainly in the form
of a will and was declared by the decedent to be his will,

and it excludes his son William, the appellant here, as plainly as the intention could be expressed. But is it in substance a will? Does it dispose of anything? The circuit court held that by implication it does. But is such a conclusion a necessary implication from the words used? Can the words be said to have no other significance? Taken together, do they clearly satisfy the mind, leaving no room to doubt that the decedent meant to dispose of his estate? We think not. On the contrary, fairly construed, the instrument simply revokes all other wills theretofore made by the decedent, and excludes the appellant, giving the reason therefor. That is all; and to hold that it amounts to anything more would render futile the principle that a man can disinherit his heirs only by giving his estate to somebody else, and by carrying too far the doctrine of devises by implication would, by judicial construction, make a will for the decedent that he has not made for himself."

In Denn v. Gaskin, Cowp., 657, Lord Mansfield said: "Though the intention to disinherit the heir be ever so apparent, he must, of course, inherit, unless the estate is given to somebody else; and the reason is that the law provides how a man's estate at his death shall go, unless he by his will plainly directs that it shall be disposed of differently." This seems to be the well-settled common law rule. See cases cited in note to Coffman. Coffman (Va.) 2 L. R. A., 848 (s. c. 8 S. E., 672); Blackman v. Gordon, 44 Am. Dec., 241.

The court below seems to have followed Tabor v. McIntire, 79 Ky., 505, where the will was thus: "For sundry reasons and bad treatment, it is my will and wish that Boone Tabor shan't have any of my property, and Thos. McIntire only through a responsible trustee, in the way

of clothes and something to keep him from suffering." The testator had six brothers and sisters. One sister had died, leaving two children, Boone Tabor and Richard Tabor. Another sister had died, leaving one child, Thomas McIntire. It was held that Boone Tabor took no part of the estate, and that Richard Tabor took the share his mother would have taken if living, or one-sixth of the estate.

But this case is irreconcilable with the subsequent case of Philipps v. Philipps, 93 Ky., 498, (20 S. W., 541), above referred to; for, although in the opinion of that case some stress is laid upon the statute requiring children to be made equal in the distribution of the undevised estate of the testator, this could not have controlled the court, for the reason that, if the exclusion by the will of one child operates by implication as a devise to the other children, there was no undevised estate in that case. The decision must therefore be taken as holding that the mere exclusion of one of the heirs at law does not operate by implication as a devise to the others.

The intention of the testator in this case, though awkwardly expressed, is clear. He intended to exclude certain of his kindred, but, having failed to dispose of the property in contest, it passed to his heirs at law as undevised estate. The case of Tabor v. McIntire is overruled. Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.