JAMES C. BRADFORD *et al. v.* J. O. LEAKE *et al.*

(*Nashville.* December Term, 1910.)

1. **WILLS.** Testator cannot disinherit his heirs by words of exclusion, but only by giving his property to others.

A testator can disinherit his heirs only by giving his property to others, and mere words excluding the heirs, without an affirmative disposition to others, will not suffice to disinherit them; for the right of a person to disinherit his heirs exists, not as a distinctive or abstract substantive power, but merely as a consequence of the power to leave his estate to others, and while a testator may make or revoke his will, he can neither make nor unmake a law of the State. (*Post, pp.* 315-328, and especially 320-328.)

Cases cited and approved: Coffman v. Coffman, 85 Va., 459; Boisseau v. Aldridges, 5 Leigh (Va.), 222; Todd v. Gentry, 109 Ky., 704; Galligher v. Crooks. 132 N. Y., 338; Lawrence v. Smith, 163 Ill., 149, 166; Wells v. Anderson, 69 N. H., 561; Wilder v. Holland, 102 Ga., 44, 45; Bourke v. Bonne, 94 Md., 472, 477.

Cases cited and disapproved: Clarkson v. Clarkson, 71 Ky., 655 (overruled by Todd v. Gentry, 109 Ky., 704, to the extent of the conflict on this point); Tabor v. McIntyre, 79 Ky., 505-509 (same as last); Sullivan v. Straus, 161 Pa., 145; In re Tucker's Estate, 209 Pa., 521; Willis v. Watson, 4 Scam. (Ill.), 65 (overruled by Lawrence v. Smith, 163 Ill., 149, 166, to extent of the conflict on this point).

2. **SAME.** Presumption of acceptance of beneficial gift, which begins at testator's death; renunciation relates to moment of gift, preventing it.

A beneficial devise is always presumed to be accepted, and, in the absence of anything to the contrary, the gift begins at the

Bradford v. Leake.

moment of testator's death; but such a devise may be re-
nounced, and where the renunciation is made, it relates to the
moment of the gift, and prevent its ever taking effect. (*Post*,
*p*. 328.)

Cases cited and approved: Bradford v. Calhoun, 120 Tenn., 53.

3. SAME.   No presumption of acceptance of an incumbered
   gift; renunciation relates to testator's death and avoids the
   gift from the beginning.

Where the testamentary gift is not *prima facie* beneficial, but is
burdened with onerous exactions, there is no presumption of
acceptance, and where there is an express renunciation, it
relates to the testator's death, and furnishes, conclusive evi-
dence that the gift was void from the beginning. (*Post*, *pp*.
328, 329.)

4. SAME.   Renounced devise stands as a lapsed or void devise,
   and the property passes under the residuary clause, if there
   be one, and if none, it goes to testator's heirs.

A devise, which does not become effective because the devisee
renounces it, stands in the category of a lapsed or void devise;
and, in such case, the property covered thereby passes under
the residuary clause, if there be one; and, in the absence of
such clause, such property goes to the heirs of the testator.
(*Post*, *p*. 329.)

Cases cited and approved:   Curd v. Curd, 9 Humph., 171; Reeves
v. Reeves, 5 Lea, 644-653.

5. SAME.   A testator dies intestate as to property not effectu-
   ally disposed of by his will.

Where a testator gave his residuary estate to his mother,
coupled with a provision that no part of his estate should
come into the possession of his sister or her descendants, and
providing that, upon the death of his mother intestate, the
property should go to a third person; and where the mother
devised certain real estate, received under such   residuary

clause, to a devisee who renounced the same, it was held that the mother died intestate as to such real estate, and it passed to the third person under the prior will, because a testator dies intestate as to property not effectually .disposed of by his will. (*Post, pp.* 317, 329, 330.)

6. SAME. Condition that property devised shall not go to a certain person by devise or inheritance does not follow the property as a limitation to the condition, when.

The condition in the will that none of the property should pass to testator's sister or her descendants did not follow the property into the hands of any one upon whom the same might be devolved through the operation of the limitation attached to the condition, and the devisee under the second will, had he accepted the devise instead of renouncing it,. could have made such disposition of the property as he saw fit, and could have either given it away or sold it; and the third person, taking the gift under the first will, upon the death of the mother intestate, as shown in the preceding headnote, could have likewise made any disposition of it he desired, and could sell or give it to the first testator's sister or to her descendants. (*Post, pp.* 330, 331.)

7. SAME. Harsh will is entitled to a fair and reasonable construction, but not to a tender or equitable one.

A will so harsh as to direct that no part of testator's estate shall pass to his sister or her descendants is not entitled to a tender or equitable construction; but it is entitled to a fair and reasonable one. (*Post, p.* 331.)

8. DEEDS OF CONVEYANCE. To one for life, and then to his children, but to revert if his issue should become extinct within twenty-one years, vests a determinable fee in his surviving children, subject to the contingent reversionary estate.

Where a mother and father conveyed her land to their son as trustee for himself for life, and on his death to his children, with a provision that, if his issue should become extinct within

twenty-one years after his death, the property should revert to the mother; and the mother subsequently devised all her estate, including said contingent reversionary estate, to her husband who conveyed such contingent estate to his brother; and upon the death of the said son and trustee, the life tenant, leaving two children surviving, it was held that a determinable fee vested in the two children, subject to the contingent reversionary interest of the said brother, upon a failure of the issue of the son and trustee within twenty-one years after his death. (*Post, pp.* 331-333.)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON Chancellor.

JNO. J. VERTREES, P. D. MADDIN, and W. A. GUILD, for complainants.

J. M. ANDERSON, W. A. BUNTIN, SEAY & SEAY, FRANK SLEMONS, OVERTON LEA, and PERKINS BAXTER, for defendants.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed by the executors of the will of Mrs. Rebecca S. Lea, deceased, in the chancery court of Davidson county, for the purpose of settling her estate, and, as incidental thereto, to obtain a construction of her will, and of the will of her son, John M. Lea,

Jr., under which she derived nearly all of the property which she devised. All of the questions involved in the case were settled in the court below, except those which affect the property described in the seventh item of Mrs. Lea's will. As to the property devised in this item, there is a controversy between Mrs. Bessie Leake, the daughter of Mrs. Lea, and a brother of Mrs. Lea, and the children of her deceased brothers and sisters. It is insisted by the latter that Mrs. Leake, the daughter, is debarred from taking this property by virtue of certain provisions in the aforesaid will of John M. Lea, Jr.

In order to a proper understanding of these matters, it is necessary to set out a portion of the will of John.M. Lea, Jr., and likewise the seventh item of the will of Mrs. Lea.

So much of the will of John M. Lea, Jr., as it is necessary to reproduce is as follows:

"As to all the rest, residue and remainder of my estate and effects, whatsoever and wheresoever, both real and personal, whether in possession, reversion, remainder or expectancy, I give, devise and bequeath the same unto my mother, Rebecca Salmons Lea, to and for her own use and benefit absolutely, provided that she does not marry again; but, if she marries again, I give, devise and bequeath the same, from the time of her marriage, to my cousin, Overton Lea, Jr., son of Overton Lea, Sr., of Nashville, Tenn.

"I will and direct that not any portion of my estate come into the possession of my sister, Bessie Kelly, the

wife of Robert Dalton Kelly, or into the possession of her husband, or of any descendant of hers, or of any one bearing the name of Kelly.

"In case my mother, Rebecca Salmons Lea, dies during my lifetime, or in case she dies intestate, or in case she gives or bequeathes to my sister, Bessie Kelly, or her husband, or any descendant of hers, or any one bearing the name of Kelly, any portion of my estate, I give, devise and bequeath said rest, residue and remainder of my estate and effects whatsoever, both real and personal, whether in possession, reversion, remainder or expectancy, unto the said Overton Lea, Jr., to and for his own use and benefit absolutely."

Item 7 of the will of Mrs. Lea is as follows:

"Item 7.  To Overton Lea, of Davidson county, Tennessee, brother of my deceased husband, I devise the following property in Memphis, Tennessee, subject to the mortgage thereon, which, in accepting this bequest, he must take subject to and assume the payment of said mortgage:

"(a)   Part of lot one hundred and nine (109) in the original plan of Memphis, being the northwest corner of Main and Court streets, thirty-five (35) feet by one hundred and forty-eight and one-half (148½) feet, upon which is erected a six-story storehouse, now occupied by Lowenstein & Co.

"(b)   A lot on the southwest corner of Madison and De Soto streets, fronting fifty-four (54) feet on Madison

street, and one hundred and forty-eight (148) feet on De Soto street."

Overton Lea filed a formal renunciation and refusal in writing to accept the devise sought to be given him.

This renunciation precipitated the controversies which we are to settle in the present case.

The validity of that portion of the will of John M. Lea, Jr., which is reproduced above was settled by this court in the case of *Overton* v. *Lea,* 108 Tenn., 505, 68 S. W., 250.

Mrs. Lea survived her son, and she never remarried.

It is insisted in behalf of the collateral kindred of Mrs. Lea that the conditional limitation (for a discussion of which subject, see *Fowlkes* v. *Wagoner,* 46 S. W., 586), based on the contingency of Mrs. Lea dying intestate, or of an attempted disposition of the property by her to Bessie Kelly, now Bessie Leake, imposed upon the property in her hands was satisfied by the execution of the will, even though the seventh item of it, which alone concerned the property involved, was rejected by the proposed devisee; that she died testate in September, 1905, and thereby satisfied and prevented the operation of the conditional limitation, and that the subsequent renunciation by Overton Lea, in February, 1906, could not restore such conditional limitation to life and vigor; and that upon the filing of such renunciation the property would simply fall into the estate of Mrs. Lea, to be disposed of under the statute of descents, save only that the daughter could not inherit from the mother because

of the provision in the will of John M. Lea, Jr., which roads: "I will and direct that not any portion of my estate come into the possession of my sister, Bessie Kelly, wife of Robert Dalton Kelly, or into the possession of her husband, or of any descendants of hers, or of any one bearing the name of Kelly;" and that by reason of such setting aside of Mrs. Kelly (now Mrs. Leake), the collateral kindred, the brothers' and sisters' children would be the next of kin, and would take the property by inheritance from Mrs. Lea. In support of this view we are referred to the following: On the point that she did not die intestate, having left a will, although it was ineffectual, 23 Cyc., 41; 2 Bl. Com., 494; 2 Kent's Com., 408-409; 1 Bouvier's Law Dictionery, 1117, Rawl's Revision; *Den.* v. *Mugway,* 15 N. J. Law, 330-331; *In re Commissioners' Estate,* 47 App. Div., 120, 62 N. Y. Supp., 188; *Messman* v. *Egenberger,* 46 App. Div., 46, 61 N. Y. Supp., 556: On the point that the language last quoted was a condition annexed to the estate, and binding, no matter into whose hands it might pass, *Hogeboom* v. *Hall,* 24 Wend., 146; *Pickering* v. *Pickering,* 15 N. H., 218; *Wilson* v. *Wilson,* 38 Me., 18, 61 Am. Dec., 227; *Taylor* v. *Sutton,* 15 Ga., 103, 60 Am. Dec., 682: On the point that conditions which prevent the alienation of the estate to a particular person or for a certain limited period, if reasonable, are not subversive of the estate, Pritchard on Wills, section 161: On the point that a provision in a will declaring that a certain person shall never take the estate is good, although the property is not given in the same will to any other,

*Tabor* v. *McIntire,* 79 Ky., 505-509; *Clarkson* v. *Clarkson,* 71 Ky., 655; *Sullivan* v. *Straus,* 161 Pa., 145, 28 Atl., 1020; *In re Tucker's Estate,* 209 Pa., 521, 58 Atl., 898; *Willis* v. *Watson,* 4 Scam. (Ill.), 65: On the point that, where the immediate heirs cannot succeed to the estate, then it will pass to those next entitled under the law, *Mager's Succession,* 12 Rob. (La.), 584; *Layre* v. *Pasco,* 5 Rob. (La.), 9; *Jackson* v. *Jackson,* 7 Johns, (N. Y.), 214; *Scott* v. *Cohen,* 2 Nott & McC. (S. C.), 293; *Orr* v. *Hodgson,* 4 Wheat., 453, 4 L. Ed., 613.

Counsel for the executors have filed a brief, in which they concede Mrs. Rebecca S. Lea did not die intestate, but insist her daughter Mrs. Kelly took the property of Mrs. Lea as heir of her mother, Mrs. Rebecca S. Lea.

With reference to the above clause of the will of John M. Lea, Jr., relied on ("I will and direct that not any portion of my estate come into the possession of my sister, Bessie Kelly, wife of Robert Dalton Kelly," etc.), it is said that this is ineffectual and abortive, because a negative instrument is not a will; that to be a will it must be an affirmative dispositive document, as to which there is one recognized exception, to the effect than an instrument in the form of a will, which nominates and appoints an executor or revokes a previous will, without making any affirmative disposition of property, has also come to be regarded as a will (1 Rood on Wills, section 479; 1 Underhill on Wills, sections 4, 5, pp. 6, 7; 1 Jarman on Wills, 16); but, for the reason that a will, to be effective so far as property is concerned, must be an af-

firmative dispositive document, it is well settled that negative and prohibitive provisions are inoperative and without effect, citing Rood on Wills, section 497, as follows: "The law appoints definite methods and channels of disposition of all intestate property. The heirs take by operation of law, without any act or will of the intestate. He can deprive them of it only by exercising the option the law gives him of disposing of it while he lives, or giving it to others by his will. If he says: 'I wish my sons to have only one dollar each from my estate,' or 'I give this property to my wife in satisfaction of all her claims on my estate,' he does not thereby give the rest of his property to any one else, either expressly or by implication. . . . The unfavored children will take their regular share" of all the property not given to any one else. See, also, *Coffman* v. *Coffman*, 85 Va., 459, 8 S. E., 672, 2 L. R. A., 848, 17 Am. St. Rep., 69, 7 Am. Prob. Rep., 380, in which the principle is decided that a testator can disinherit his heirs only by giving his property to others, and that mere words of exclusion, without an affirmative disposition to another, will not suffice to disinherit.

In that case the testator said: "It is my will that my son William H. Coffman be excluded from all my estate at my death, and have no heirship in the same;" but the testator did not give his property to the other sons, or to any one else. It was held that William took his equal share. The argument was made and considered that the testator (as in *Boisseau* v. *Aldridges*, 5 Leigh [Va.], 222,

27 Am. Dec., 590), knowing that the law would give his estate equally to his children, excluded William for the purpose of letting the others take it all under the law; but the doctrine was rejected, on the principle that the right of a person to disinherit his heirs exists, not as a distinctive or abstract substantive power, but merely as a consequence of the power to leave his estate to others.

*Todd* v. *Gentry,* 109 Ky., 704, 60 S. W., 639, decided by the court of appeals of Kentucky, is to the same effect. There the testator plainly intended to exclude certain of his heirs from sharing in his estate, but he wholly failed to make any disposition of a certain tract of land. The court held that it passed to all his heirs, including those he attempted by negative terms to exclude. To same effect, see, also, *Gallgher* v. *Crooks,* 132 N. Y., 338, 30 N. E., 746; *Lawrence* v. *Smith,* 163 Ill., 149, 166, 45 N. E., 259; *Wells* v. *Anderson,* 69 N. H., 561, 44 Atl., 103; *Wilder* v. *Holland,* 102 Ga., 44, 45, 29 S. E., 134; *Bourke* v. *Bonne,* 94 Md., 472, 477, 51 Atl., 396.

The Kentucky cases cited by counsel for the collateral heirs, *Tabor* v. *McIntire,* supra, and *Clarkson* v. *Clarkson,* supra, so far as they are in conflict with *Todd* v. *Gentry,* supra, are overruled thereby. Indeed, *Tabor* v. *McIntire* is expressly overruled. Likewise *Willis* v. *Watson,* supra, if it is in conflict with the later case of *Lawrence* v. *Smith,* supra, is controlled thereby. As we understand *Willis* v. *Watson,* however, it does not seem to be in conflict. It appeared in that case that the whole estate had been disposed of by appropriate language in

the will.   Moreover, it is intimated in the opinion that, if there had been no such affirmative disposition, the party intended to be excluded would have inherited an inter-est in the property involved in the litigation.

*Sullivan* v. *Straus,* supra, cited by counsel for the collateral heirs, is fairly open to the construction that there was a disposition of the property to some one else, as well as the clause providing  that  a  particular  child should never take.  *In re Tucker's Estate,* supra, is meager and unsatisfactory.

We are of the opinion that the true rule is that supported by *Coffman* v. *Coffman,* supra, and *Todd* v. *Gentry,* supra, and the cases we have cited therewith.  A testator may make or revoke his will, but he can neither make nor unmake a law of the State.

It is truly said by counsel for the executors that John M. Lea, Jr., kept his estate from going to his sister, Bessie, not by the provision that she should not have any of it, but by the affirmative devise to his mother, Mrs. Rebecca S. Lea.

He evinced a purpose to exclude his sister, not only from taking under his will, but from taking from her mother by descent.  Accordingly he provided that if his mother should devise these lands to her daughter, his sister, Bessie, or should die intestate, so that but for his will the lands would descend to Bessie, then Overton Lea, Jr., should take.

The argument for the executors is thus continued:

"Mrs. Elizabeth Lea had only two children, Overton

and Robert Lea. She devised to them equally a large estate. Mrs. Elizabeth Lea was dead, and Robert was dead. When Robert died, he devised his ancestral lands to his wife, Rebecca, for life, and at her death equally to their children, John M., Jr., and Bessie. John M., Jr., dying childless, devised his ancestral lands to his mother, with the harsh provision that she should not devise them to her only child Bessie, his sister—which, of course, she wanted to do, but she could not. It was eminently just that she should give these lands back to the Leas—to Overton Lea, the only surviving child of Mrs. Elizabeth Lea, and brother of her husband, Robert Lea. Notwithstanding this act of justice, the mother in a letter expressed the hope that he would let her daughter Bessie receive the income during life. It is clear, as she could not give the property to Robert Lea's child, that she ought to have given it to Robert Lea's brother, Overton, and this she did.

"When John M. Lea's will provides that the property shall go to Overton Lea, Jr. (the son of Overton Lea, Sr.), now dead, 'in case she (Rebecca) dies intestate,' it is to be taken that he means intestate as to the property which he gives to her—not general intestacy. She did not die intestate as to that. She devised it to Overton Lea, Sr., the man who ought to have had it, if it could not be given to his brother Robert's daughter, Bessie.

"Mrs. Rebecca Lea received these lands from her son John M. under the limitations imposed by his will. When she lived up to them, and did all that they required, and

all that it was possible for her to do, they were met and ceased thenceforward to be operative. Mrs. Rebecca Lea had the power under her will to devise these lands to anybody except Bessie and the Kellys. She devised them to Mr. Overton Lea, as she ought to have done. The will was a valid will, and it was duly probated. In the nature of things that was the end of the matter so far as the operation of the limitations of John M. Lea, Jr.'s, will was concerned. This must be so because Mrs. Rebecca Lea's title and right of disposition depended alone upon her own voluntary acts—not on the acts of any one else. She could refuse to make a will, and die intestate, and thereby defeat her daughter. The validity of her gift and the title of her devisee depended alone upon the selection of a devisee that she should make. If she did not select her daughter Bessie, or a child of Bessie's, or a Kelly, the devise was good and valid.

"She selected a person (Mr. Overton Lea) not in the proscribed class, and died. It was not possible for her to do more. It was not possible for her to provide against the renunciation of the devisee after she was dead, and the will does not provide for this event. . . .

"When Mrs. Lea died testate, leaving a valid will which devised the lands to Overton Lea, who did not belong to the excluded class, the conditional limitations imposed by the will of John M. Lea upon his mother, his first devisee, were exhausted. The force of the will of John M. Lea, Jr., was spent. Up to the moment that Mrs. Rebecca Lea died testate the personal limitations

of John M. Lea, Jr.'s, will controlled. Thenceforward
the law controlled. Mrs. Lea did not die intestate as to
this land; but, when Overton Lea renounced, the lands
had to be dealt with the same as if she had died intestate
as to them. Under the law they descended to Mrs. Re-
becca S. Lea's heirs, whomsoever they might be. That
Mrs. Leake was the sole and only heir is but an accident
in the case.

"If John M. Lea had thought to provide against the
contingency of renunciation by the devisee under his
mother's will, he, of course, could have done so. He prob-
ably would have done so, had he anticipated that the
devisee might renounce; but he did not. Perhaps his
judgment of men was such that he regarded it as beyond
the limits of possibility that any one would have pride
and convictions sufficient to induce him to refuse a large
and valuable devise. However, we must not speculate.
As a matter of fact, he did not provide against renuncia-
tion by his mother's devisee; and, as a consequence,
his mother's heirs take the property."

By the counsel who directly represents Mrs. Leake it
is contended that since the devise, attempted by Mrs.
Lea, to Overton Lea, never became effective, because of
his refusal to accept it, she died intestate as to the prop-
erty in controversy, the conditional limitation based on
her dying intestate became operative and passed the
property to the heirs of Overton Lea, Jr., he having pre-
deceased Mrs. Lea, and that by a quitclaim deed which
these heirs (Hon. Luke Lea, Miss Elizabeth Lea, and

Mrs. Laura Robertson, joined by her husband, W. C. Robertson) made to Mrs. Leake the property passed to her.

It is perceived that the counsel for the executors and the personal counsel for Mrs. Leake reach the same final conclusion but by different lines of reasoning, while the counsel for the executors and those who represent the collateral kindred agree upon the premises that Mrs. Lea died testate as to the property involved herein, and that her act in making the will was by the renunciation of Overton Lea rendered abortive so far as concerned the passing of title to the property involved; but they draw different and opposite conclusions from these premises, owing to divergent views taken as to the means of rendering effectual that clause of John M. Lea, Jr.'s, will which provided that no portion of his estate should ever come into the possession of his sister Bessie, now Mrs. Leake.

If the premise be granted that Mrs. Lea died testate as to the property in controversy, and also the view be held sound that the testator cannot deprive his heir of property by mere negative words, but only by an affirmative disposition to another, the conclusion reached by the counsel for the executors, we think, follows with rigid logical accuracy.

On the other hand, if the true conclusion be that Mrs. Lea died intestate as to this property, then it follows with equal accuracy that it passed under the conditional

limitation to the heirs of Overton Lea, Jr., and from them, by their deed, to Mrs. Leake.

Whether Mrs. Lea died intestate as to this property depends upon the view taken of the effect of the renunciation filed by Overton Lea, Sr.

A beneficial devise is always presumed to be accepted, and, nothing else appearing, the gift will begin immediately upon the going into effect of the will; that is, at the moment of the testator's death. However, even such a devise may be renounced, and in that event the renunciation will relate to the moment of the gift, and prevent its ever taking effect. *Bradford* v. *Calhoun*, 120 Tenn., 53, 109 S. W., 502, 19 L. R. A., (N. S.), 595. Where the gift is not *prima facie* beneficial, but saddled with onerous exactions, there is no presumption of acceptance. When there is an express renunciation in such a case, it will relate to the death of the testator, as in the former instance, and will furnish conclusive evidence that the gift was void from the beginning. In the present case there was a mortgage of $34,000 upon the property, which the devisee was required to assume, and, by reference to the fourteenth item, also an annuity of three hundred dollars per year, payable in installments of twenty-five dollars per month in favor of Price and wife, charged upon the same property. In addition, there was a letter, written by Mrs. Lea to Overton Lea, Sr., in which she requested him to give all of the income to her daughter during the life of the latter. This letter was not a part of the will, and could impose only a moral obligation

upon Mr. Lea, if he had accepted the gift. Still it would be a matter for consideration in determining whether there would be a presumption of acceptance. This letter, taken in connection with the large debt and the annuity, would make it clear that there could be no such presumption; indeed, we think the requirement that he should assume so large a debt, and should pay the annuity to Price and wife, would be sufficient to prevent any presumption in favor of acceptance, even though the property was worth very much more than the debt.

In any event, the devise never became effective, and so stood in the category of a lapsed or void devise. 18 Am. & Eng. Enc. of L. (2d Ed.), 747-769, inclusive. In such cases the rule is, where there is a residuary clause, the property covered by the lapsed or void devise goes to the residuary devisee. *Reeves* v. *Reeves*, 5 Lea, 644-653. In the absence of such a clause, it goes to the heirs of the testator. *Curd's Adm'r* v. *Curd*, 9 Humph., 171. The property in the present case would have taken the same direction, but for the limitation over upon intestacy.

Now, while it may be said that Mrs. Lea went through all the forms of making a will as to the property in controversy here, yet it did not result in a disposition of the property. As to this property she died nominally testate, but really intestate. Though the ordinary meaning of the word "intestacy" is that it is the state of one who has died without making a will, we think it is clear that John M. Lea, Jr., intended to be understood as saying

that, if his mother should die without effectually disposing of the property which he was devising to her, it should, upon her death, pass to Overton Lea, Jr. His purpose, in that aspect, was to prevent his sister's taking the property as heir of her mother. To that end he directed that if his mother should die without having disposed of the property to some one other than Bessie Kelly, or her husband, or any descendant of theirs, or any one bearing the name of Kelly, it should pass to Overton Lea, Jr. She having died without such effectual disposition, we are of the opinion that it did pass to the heirs of Overton Lea, Jr., and that Mrs. Leake takes under them through the deed which they made.

It is insisted in the brief of counsel for the collateral kindred, as already indicated, that the condition against Mrs. Leake's becoming owner of the property inhered therein, in whosesoever hands it might fall. We do not think this is a sound view. John M. Lea, Jr., could not prevent his sister's taking the property, even as the heir of her mother, except by a provision in his will giving it to another; and it is no less true that this condition could not follow the property into the hands of any one upon whom the property might be devolved through the operation of the limitation attached to the condition. That is to say, if Overton Lea, Sr., had accepted the devise, he could have made such disposition of the property as he saw fit. He could have either given it away or could have sold it. So, when through the substantial and actual intestacy of Mrs. Lea in respect of this prop-

erty, it passed under the will of John M. Lea, Jr., to the heirs of Overton Lea, Jr., they became owners of it in fee, and had power to sell it or give it to Mrs. Leake or to any one else.

At this point we deem it not improper to say that the generous conduct of the heirs of Overton Lea, Jr., in bestowing the property upon Mrs. Leake, is recognized by the court as most commendable. Whatever may have been the cause which moved John M. Lea, Jr., to make his most harsh and unnatural will, so far as it related to his sister, the record shows no blame on her. We are likewise convinced that her mother earnestly desired that she should have the benefit of the property, and that she adopted the course which she believed would lead most directly to that end. A will so harsh as that of John M. Lea, Jr., can claim no tender or equitable construction; but it is entitled to a fair and reasonable one. It gives the court pleasure to realize that in following the rigid path of the law we have been conducted to a result highly equitable in itself, and satisfying to the conscience and heart as well.

In what has been said, it must not be understood that we intend in any way to interfere with, or to question, the prior contingent estate created by the deed of Elizabeth B. Lea and John M. Lea in 1881 to Robert B. Lea, trustee, conveying the property in question to Robert B. Lea in trust for himself during his life, and after his death to his children, and providing, further, that if he should die and his issue should become extinct within

twenty-one years thereafter, the property should revert to the said Elizabeth B. Lea, who was the mother of Robert B. Lea, and Overton Lea, Sr.

Robert B. Lea died in January, 1895, leaving two children, John M. Lea, Jr., and Bessie Lea. The latter subsequently intermarried with Dalton Kelly, and after Kelly's death in 1897 she intermarried with one of the defendants in this case, J. O. Leake, and has living by her second marriage two children, the defendants Dorothy and Esther Leake. The estate conveyed by the deed of Elizabeth B. Lea and John M. Lea in 1881, after the death of the late Robert B. Lea in 1895, vested in the late John M. Lea, Jr., and Bessie Lea, subject to be divested in the event that both of them should die without leaving issue within twenty-one years after the death of the said Robert B. Lea. In 1890 the said Elizabeth B. Lea died, leaving a last will and testament, in which she made a specific devise giving all her lands, tenements, and hereditaments to John M. Lea, Sr., her husband. John M. Lea, Sr., thus became the owner of the contingent reversionary interest reserved to the estate of Elizabeth B. Lea in the aforesaid deed of 1881. This was the *status* when Robert B. Lea died in January, 1895. Thereafter, in 1898, the said late John M. Lea, Sr., by deed conveyed to defendant Overton Lea, Sr., the contingent estate which he had received from his wife, and thereupon the ownership of the property was vested as follows: A determinable fee in John M. Lea, Jr., and Bessie Lea Kelly (now Bessie Lea Leake), subject to

Bradford v. Leake.

the contingent reversionary interest above mentioned in Overton Lea, Sr., upon a failure of the issue of Robert B. Lea within twenty-one years after his death.

It follows that there was no error in the result reached by the chancellor, and his decree must be affirmed.