ANNA P. CHILCOAT ET AL. *v.* FRANK REID ET AL.

[No. 70, October Term, 1927.]

*Decided January 12th, 1928.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, and PARKE, JJ.

*Edward D. Martin, Clater Webb Smith, Ernest W. Beatly,* and *T. Lyde Mason, Jr., (S. K. Smith* on brief), for various appellants.

*Daniel R. Randall,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Edward Pickering Philpot, of Baltimore County, Maryland, on February 8th, 1883, executed in due form his last will and testament, in which he undertook to dispose of his entire estate. The provisions of that will which are germane to the issues in this case are as follows:

"I give and devise to my dear wife Anna my farm whereon I now reside known by the name of 'Stamford' containing as pr record, about one hundred and ninety-six acres of land more or less and also a wood lot containing twenty-five acres more or less, being a part of a tract of land called Philpot's Enquiry, adjoining the lands of Ephriau Harris and Willis Woolston during her natural life and from and after her decease, I give and bequeath the same to my nephew Brian Philpot, who now resides in Chicago, Illinois. * * *

"I devise and bequeath the residue of my estate both personal and mixed to my dear wife, including household furniture, etc., said bequest to be understood and considered as exclusive of her life estate as heretofore set forth and expressed in this my last will and testament."

On September 22nd, 1883, he executed also in due form a codicil to that will in the following form:

"Now, I, Edward Pickering Philpot, do will, devise and bequeath as follows, viz: From and after the death of my dear wife, I give, will and bequeath to my nephew Brian Philpot, who now resides in Chicago, the farm whereon I now reside, known by the name of 'Stamford,' containing about one hundred and ninety-six acres of land, more or less, and also a wood lot mentioned in my said will and testament, said wood lot containing twenty-five acres of land, more or less, and called 'Philpot's Enquiry,' provided the said Brian Philpot, his heirs, executors, administrators or assigns pay to my great niece Lizzie Philpot, now residing in Frederick County, Maryland, she being a daughter of my deceased nephew, Edward Philpot, the sum of

sixty dollars ($60.00) per annum during the lifetime of my dear wife, the first payment of said sum of sixty dollars to be made in May, eighteen hundred and eighty-four, and so on in every year during the natural life of my dear wife, at whose death the payment of said annual sum of sixty dollars to my said niece, Lizzie Philpot, shall end and cease, as it may be ended and determined at any time by the payment of the sum of one thousand dollars to the said Lizzie . Philpot by the said Brian Philpot, his heirs, executors, devisees or assigns."

After his death, which occurred in 1890, both the will and the codicil were admitted to probate in the Orphans' Court of Baltimore County, and on December 6th, 1924, his widow Anna (who after his death married Edward E. Chilcoat), filed a bill of complaint, in the Circuit Court for Baltimore County, for the sale of the real estate described in the codicil, in which she named as defendants all the heirs at law of the testator, and of Brian Philpot, and all persons claiming by through or under them, so far as they were known to her. The several defendants, who appear to be all the persons who have or could have any claim to the estate of the testator, answered the bill, admitted the jurisdiction of the court, consented to the passage of a decree for a sale of the real estate described in the bill, and reserved all questions concerning the construction of the will and codicil for determination by the court in connection with the distribution of the proceeds of any sale of the real estate which the court might direct. A decree was accordingly passed for the sale of the real estate, and Samuel K. Smith, Esq., and Daniel R. Randall, Esq., were appointed trustees to make the sale. In due course they qualified and reported a sale of the property at a price which left in their hands for distribution $13,388.46. That sale was ratified, and the case went to the auditor, who filed an account distributing that fund to Anna P. Chilcoat, the widow of the testator. Exceptions to that account were filed respectively by certain heirs of Edward P. and Brian Philpot, and by certain per-

sons claiming as creditors or legatees an interest in the fund, and after a hearing and testimony those exceptions were sustained, and the fund distributed to the heirs at law of Edward P. Philpot, subject to the life estate of Anna P. Chilcoat. From that order Anna P. Chilcoat and certain of the exceptants appealed.

The case comes to this court upon the record facts which we have stated, upon certain other facts embodied in an agreed statement, and upon certain testimony given by Mrs. Chilcoat and Brian F. Philpot, but before referring to those additional facts and that testimony, we will state the respective contentions of the several parties to the appeal.

Mrs. Chilcoat, as the widow of the testator, contends (1) that Brian Philpot has no interest in the land (a) under the will, because he failed to make the payments called for by the devise to him, or (b) as the heir at law of the testator, because (2) the heirs at law of the testator have no interest in it, since upon the failure of the devise to Brian, the land fell into the residuum of the estate, and (3) passed to her under the residuary clause of the will.

The heirs of Brian Philpot claim (1) that distribution at this time is premature, since changes may occur prior to the death of the life tenant which will affect the devolution of the estate, (2) that if the devise to Brian failed for any reason, that the testator died intestate as to the estate in the land remaining after the life estate, but that (3) it did not fail because, even though Brian did not make the payments called for by the codicil, they were made by his heirs, and that payment by them gratified the requirements of the codicil, since such payments could be made at any time during the life of the life tenant.

The heirs of Edward Pickering Philpot contend that, Brian Philpot having failed or refused to make the payments required by the codicil, the devise to him failed, that the testator died intestate as to the estate in the land remaining after the death of the life tenant, and that the land passed to his heirs at law.

The personal representatives and legatees under the will

of Elizabeth Philpot Joliffe, *née* Philpot, and certain lega-
tees claiming under her will, contend that the devise to Brian
did not fail, but vested in him subject to a charge in favor
of Mrs. Joliffe, and that her personal representatives are en-
titled to enforce that charge.

In connection with these contentions the following facts,
which are admitted, must be considered: Edward Pickering
Philpot at the time of his death left no child nor any de-
scendant of a deceased child, to survive him, but his next of
kin and heirs at law were three sisters, Mary Philpot Frazier,
Clara Philpot Merryman, and Elizabeth Philpot Blanchard,
and two brothers, Brian Philpot, Sr., and John Philpot. Of
these Mary Ann Philpot Frazier died intestate, leaving
neither husband nor issue, and of the others all died intestate
but leaving issue. Brian Philpot, named in the codicil to
the will of Edward P. Philpot, refused to make the payments
payable under said codicil nor did Annie P. Lobdell, nor
Emma P. Leeb, nor Albert D. Philpot, the children of said
Brian Philpot, deceased, ever make said payments. Eliza-
beth Philpot Joliffe (who is the same person as the Lizzie
Philpot mentioned in said codicil to the will of Edward P.
Philpot) died on December 25th, 1923, leaving a last will
and testament, duly probated in the Surrogate's Court of
Bergen County, New Jersey, a copy of which will has been
filed in the Orphans' Court of Baltimore County and in this
cause; that the residuary devisees named in said will, namely,
The Hackensack Hospital and the Church of St. John the
Divine, are both parties to this cause; that James De Turck
is the duly qualified executor of said last will and testament.

The testimony to which we have referred was given by
Mrs. Chilcoat and Brian F. Philpot. Mrs. Chilcoat testified
as follows: "State whether or not you know of any payments
having been made by Brian Philpot under the terms of said
codicil? 4A. To the best of my knowledge and belief Brian
Philpot never made any such payments to Lizzie Philpot.
Colonel Philpot communicated to Brian Philpot the contents
of said codicil, and I recall that Brian Philpot definitely
refused to make the payments which the codicil provided

should begin in May, 1884. Colonel Philpot himself made one of the annual payments provided for by the codicil to his said will. To the best of my knowledge no one else ever paid to Lizzie Philpot any of the sums of money mentioned in said codicil." And Brian F. Philpot, who was a son of Brian Philpot, Sr., testified that his father, so far as he knew, never made any payments to Lizzie Philpot Joliffe under the will of Edward P. Philpot; that he (the witness) made several contributions to said Lizzie Philpot Joliffe. He also said that Mrs. Joliffe's husband, Dr. Joliffe, was incapacitated as the result of an accident, and without means of support, and that he took care of them, contributed to their support, gave them what they needed, and that altogether he gave Mrs. Joliffe not less than $4500, but that no statement was ever made to her that these contributions were made to comply with the terms of the codicil, and he added this: "(The Court): Mr. Philpot, it is perfectly obvious you were very kind to this lady and it is most praiseworthy and commendable, but these things pertain so frequently among people of means and influence. Have you anything to tell the court by which it was clearly understood between you and her, any conversation or writing or anything of that kind, that this was to be payments under the will. (The Witness): No writing existed except in this letter I speak of, that mentioned it and which I have lost, and in conversation we had frequent conversations in regard to it, in which it was simply the general opinion between us and agreed to, that it was Uncle Ed's, my Great Uncle Ed's, desire that the property should remain in the Philpot name, and my brother and myself at that time were and are (the) only Philpots living. If there had never been any will I should have done the same thing." And he further said that all of these contributions were made after his father's death.

The controlling question presented by the contentions of the several parties claiming an interest in the estate of Edward P. Philpot is whether the devise to Brian Philpot, Sr., failed because he (a) renounced it, or (b) forfeited it by failing to make the payments called for by the codicil.

That a devisee may renounce a devise to him is well settled. *Defreese v. Lake,* 109 Mich. 415; *Schoonover v. Osborne,* 193 Iowa, 474; *Albany Hospital v. Albany Guardian Soc.,* 214 N. Y. 435; 28 R. C. L. 352. And while, in the absence of evidence to the contrary, it will be presumed that he accepted the devise, when it was beneficial to him (*Bradford v. Leake,* 124 Tenn. 312; 28 R. C.'L. 353; 40 *Cyc.* 1893), it has been held that there is no such presumption where the devise is not *prima facie* beneficial, but is "saddled with onerous exactions" (*Bradford v. Leake, supra*); and while there is little direct authority for that conclusion, a negative inference supporting it may be drawn from expressions found in 3 *Woerner, Administration,* 1895, *Albany Hospital v. Albany Guardian Soc., supra,* and cases collected in 27 *A. L. R.* 469, *Ann. Cas.* 1916D, 1195, 28 *R. C. L.* 352. A devise has been treated as an offer, and incomplete until accepted (*Townsend v. Tickell,* 3 B. & Ald. 31, 106 Eng. R. 575), but, whether an offer or not, it is generally held that it is not complete until it is accepted. *Ann. Cas.* 1916D, 1199. The only direct authority for the proposition that a devisee is not presumed to have accepted a devise which is not beneficial to him is found in *Bradford v. Leake, supra,* which cites no cases in support of it, but, as we have stated, it is supported by negative inferences which may be drawn from such expressions, as that "the devisee will be presumed to have accepted a devise where it is beneficial to him," which are found in a number of the cases cited above, and it may be accepted as a fair statement of the present state of such law as there is on the subject. Accepting it therefore as correct, it follows that, in cases where the devise is burdened with a charge, whether it is beneficial or not becomes a matter of fact to be determined according to the circumstances of each case. Such an inquiry is at best difficult, for it depends so largely upon the mental attitude of the devisee, for what one man might regard as beneficial another might regard as burdensome, and as the privilege of accepting or rejecting a devise belongs exclusively to the devisee,

his opinion of its beneficial character ought to have at least some weight, because the question would be, Did it benefit him? And his mental attitude might be affected by considerations known to him alone, such as a disinclination to accept a devise requiring the payment of sums which he was unable to afford, unless he disposed of the property contrary to the known but not legally binding wishes of the testator. Therefore, since the inquiry is directed to whether the devise is beneficial to the devisee, consideration should be given to the situation in which it placed him, as well as to the net value of the property devised, measured so far as possible by ordinary business standards.

The burden of proving a renunciation is upon those alleging it (*Tarr v. Robinson,* 158 Pa. 60; *Jackson's Appeal,* 126 Pa. 105; 40 *Cyc.* 1899), and, since the general rule is that the acceptance of a devise will ordinarily be presumed, the burden of proving that a particular devise is excepted from that rule, because it is not beneficial to the devisee, should be placed upon those alleging that fact, for in the absence of such proof every devise will ordinarily be presumed to be beneficial. *Tarr v. Robinson, supra.*

Approaching the question with these considerations in mind, we cannot say that the proof in this case is sufficient to satisfy us that the devise to Brian was not beneficial to him. The only burden placed upon the devise was that the devisee should pay to Lizzie Philpot sixty dollars a year, beginning in May, 1884, which could be extinguished at any time by the payment of one thousand dollars. While the evidence fails to show the price obtained for the property by the trustees, it does appear that it was large enough to leave in their hands a net fund of $13,376.46 for distribution, and we will not assume, in the absence of any evidence to the contrary, that that sum is so much greater than the value of the property at the time of the testator's death as to leave the net pecuniary value of the devise of no benefit to the devisee.

The only other matter which could affect the question was whether the property was impressed with a trust by the

following language in the first item of the will: "I give and devise to my dear wife Anna my farm whereon I now reside, known by the name of 'Stamford' containing as per record, about one hundred and ninety-six acres of land more or less and also a wood lot containing twenty-five acres more or less, being a part of a tract of land called Philpot"s Enquiry adjoining the lands of Ephrian and Willie Woolston during her natural life and from and after her decease, I give and bequeath the same to my nephew Brian Philpot who now resides in Chicago, Illinois. * * * I devise and bequeath the residue of my estate both personal and mixed to my dear wife including household furniture, etc., said bequest to be understood and considered as exclusive of her life estate as heretofore set forth and expressed in this my last will and testament." But manifestly that language could have had no such effect, because it was necessarily revoked by the codicil, which was inconsistent with it, for while the codicil and the will should be construed together as parts of a single instrument, if that is possible, yet, in so far as the two are inconsistent, the codicil must prevail as the last expression of the testator's intent. *Thomas v. Levering,* 73 Md. 451; *Johns Hopkins University v. Pinckney,* 55 Md. 365; *Lee v. Pindle,* 12 G. & J. 288; *Boyle v. Parker,* 3 Md. Ch. 42.

In our opinion, therefore, such evidence as there is is not sufficient to convince us that the devise was not beneficial to Brian, and the presumption is that he accepted it, and, as that presumption is rebuttable, the question becomes one of fact, Did he renounce it? In respect to that there are two contentions: (1) that he expressly renounced it, and (2) that he either renounced it or forfeited it, or that it never took effect, because he refused to make the payments which the codicil required.

The only evidence offered in support of the first contention is that of an interested witness, Mrs. Chilcoat, testifying to a conclusion of hers based upon some supposed statement (whether written, or oral, or hearsay does not appear) made presumably more than forty years before, without dis-

closing when, where, or by whom it was made. This evidence would ordinarily be insufficient to establish an express renunciation, but when taken in connection with the conceded fact that he "refused to make the payments payable under the codicil," it is sufficient to establish the fact of his renunciation. The devise to him was expressly conditioned upon his making the payments prescribed by the codicil, and, as he could not take the estate without the condition, when he refused, as all parties agree that he did, to comply with the condition, he, by that act, refused to accept the devise which was based upon his compliance with the condition. Appellants contend that the will and the codicil are not inconsistent, and that there is no condition, but that the property was given to him absolutely, charged with the payment of the legacy to Lizzie Philpot, subject to the life estate of the widow. But that contention ignores the facts of the case. The testator, it is true, in the will devised the land without any condition at all, but impressed with what might be claimed to be a precatory trust. In the codicil, however, while he devised it free from any trust, the devise only took effect "provided" the devisee made certain payments, beginning in 1884, some of which, if made at all, must, to comply with the terms of the will, have been made before the death of the testator, and as the estate could not have vested prior to the death of the testator, such payments must have preceded the vesting of the estate, and, whether the obligation was a condition precedent or a condition subsequent, it was undoubtedly a condition, and whether subsequent or precedent is wholly immaterial, because the devisee refused to carry it out, and because of his refusal the property never vested in him at all. *Defreese v. Lake, supra.*

For it would be difficult to conceive a more unequivocal and definite method of expressing his renunciation of the devise than that of positively refusing to comply with the condition upon which it depended. *Townson v. Tickell,* 3 Barn. & Ald. 38.

If it was a condition precedent, his failure to comply with it prevented the estate from vesting, and if it was a condition

subsequent, his renunciation of the devise related back to the death of the testator and prevented it from vesting.

So that, in our opinion, the devise to Brian Philpot failed, and the land devised to him descended to the heirs at law of the testator under the rule stated in *Lingan v. Carroll*, 3 H. & McH. 333 affirmed in *Rizer v. Perry*, 58 Md. 112; *Woerner on Amer. Law of Administration*, par. 437. And in this case the same result would follow regardless of that rule, for the residuary clause in the will under consideration here refers only to the "personal and mixed" estate of the testator, and is manifestly insufficient to embrace his real property.

It follows, from what has been said, that since the devise to Brian Philpot failed because he renounced it, that Lizzie Philpot took no interest under the will, for the provision for her benefit was not charged generally upon the testator's estate, but was conditioned upon Brian's acceptance of the devise to him, and, upon the failure of the devise to him, the provision for her benefit fell, too.

Some question was raised as to the jurisdiction of the chancellor to adjudicate at this time the rights of the parties to this proceeding in the fund realized from the sale of the testator's property, but we fail to see any force in that contention. The original complainant, Anna P. Chilcoat, the widow of the testator, claimed the absolute ownership of the entire fund in the hands of the trustees and her claim was allowed by the auditor. In disposing of exceptions filed to the auditor's account, the court was necessarily obliged to consider the claims of other parties to the proceeding in the fund which were hostile to those of Mrs. Chilcoat, and to state its conclusions in respect thereto, and it has done no more than that.

It follows therefore that the decree of the chancellor, declaring the fund in the hands of the trustees to be the property of the heirs at law of Edward Pickering Philpot, subject to the life estate of Anna P. Chilcoat, will be affirmed.

*Decree affirmed, with costs.*