## Richmond.

COFFMAN v. COFFMAN AND AL.

November 15th, 1888.

WILLS—*Disposition of property—Intestacy.*—A "will" is a disposition of one's property to take effect after his death. An instrument, in form a will and purporting to be a will, and excluding a son of the maker from participation in his estate, yet making no disposition thereof;

HELD:

> No will; decedent died intestate, and excluded son is entitled to participate as an heir in the estate.

Argued at Staunton, decided at Richmond. Appeal from decree of circuit court of Rockingham county, rendered October 12th, 1887, in the proceedings had therein for the admission to probate of the instrument hereinafter set forth as the last will and testament of Hiram Coffman, deceased, and to determine its true construction and effect. The question below was, whether the instrument was the true last will and testament of the decedent. The circuit court decided that it was, whereupon William H. Coffman, the contestant, obtained an appeal to this court. The instrument in controversy is as follows:

"I, Hiram Coffman, of Rockingham county and State of Virginia, do make and ordain this to be my last will and testament, hereby revoking all other wills heretofore by me made. It is my will that my son, William H. Coffman, be excluded from all of my estate at my death, and have no heirship in the same, he having become the heir to his mother's interest in her father's estate; and I, his guardian, have paid him, and am now about

to make a final settlement with him, which will make as much to him, and probably more, than my estate will pay to each of my other legal heirs.

"In witness of this being my last will and testament, I hereunto set my hand and annex my seal this the 10th day of March, 1877.

"HIRAM COFFMAN [SEAL.]"

*Wm. B. Compton*, for the appellant.

*Grattan & Stephenson*, for the appellees.

LEWIS, P., delivered the opinion of the court.

A will is defined to be the *disposition* of one's property to take effect after death. Bouv. Law Dic. Or, as was said by Judge Richardson in *Carr* v. *Effinger*, 78 Va. 197, 202, "a will is an instrument for the sole purpose of *disposing* of one's property." Therefore, to sustain the decree of the circuit court in this case, two things must be implied from the paper in question: (1.) That the decedent intended it as a disposition of his property, to take effect at his death; and (2) that he meant to leave, and did leave, the whole of his estate to those persons standing in the relation of his heirs and next of kin other than the appellant, who is expressly excluded. On the other hand, the appellant contends that the instrument makes no disposition of the estate at all, and consequently that the decedent died intestate.

The paper is certainly an anomalous one, and none exactly like it is to be found in any case that has heretofore come before this court. The application, however, of certain well settled principles to the case leads, we think, to the conclusion that the position taken by the appellant is the correct one.

It is a maxim that a testator can disinherit his heirs and next of kin only by leaving his property to others. Mere words of exclusion will not suffice; the estate must be actually given to

somebody else.   Though the intention to disinherit the heir be
ever so apparent, said Lord Mansfield, in *Denn* v. *Gaskin*, Cowp.
657, he must of course inherit unless the estate is given to some-
body else.   So, in his celebrated argument in *Ackroyd* v. *Smith-
son*, 1 Bro. C. C. 503; 1 Lead. Cas. Eq. 872, Mr. Scott (afterwards
Lord Eldon) said that the proposition that the heir-at-law is
entitled to every interest in land not disposed of by his ancestor
is so much of a truism that it calls for no reasoning to support
it.   It is not enough, he said, that the testator did not intend
his heir to take; he must make a disposition in favor of another,
otherwise the heir will take even against his intention, however
plainly manifested.   And the reason is, that the law provides
how a man's estate at his death shall go, unless he by his will
plainly directs that it shall be disposed of differently.

It is true the devise or bequest need not be in express terms,
and that it may be by necessary implication; but to justify such
an implication, the intention of the testator. must be so apparent
that an intention to the contrary cannot be supposed, for other-
wise the implication is not a necessary one.   1 Jarm. Wills,
532.   Thus a devise to the testator's heir after the death of A.
gives to A. a life-estate by implication, because otherwise the
devise to the heir, upon whom the law casts the property in the
absence of a disposition of it by the testator, would be rendered
nugatory, and it would, therefore, be absurd to suppose that the
testator meant to devise the land to his heir at the death of A.,
and yet that the heir should have it in the meantime.   But no
such implication arises where the devise is to *a stranger* after
the death of A., for in such a case it is possible to suppose that
the testator meant the heir to take the land during the life of
A., and therefore an intention to give a life-estate to A. cannot
be supposed.   And this, says Jarman, is an exact illustration of
the difference between necessary implication and conjecture.

According to Lord Mansfield, necessary implication is that
which clearly satisfies the court what the testator meant by the
words used.   It is the opposite, he said, of conjecture, and leaves

no room to doubt. *Wilkinson* v. *Adam,* 1 V. & B. 466; *Jones* v. *Morgan,* cited in 4 Bro. C. C. 460 ; Hawkins, Wills, 5.

Redfield lays it down that in order to create a devise or legacy by implication, it must not be a case of mere slight probability, but something in regard to which most men would not be expected to raise any question. It must not rest upon conjecture. Neither is it required that the inference should be absolutely irresistible. It is enough if all the circumstances taken together leave no doubt in the mind of the court. The words of the will, he adds, must admit of no other implication. 2 Redf., Wills, 203.

In Cruise's Dig., tit. Devise, ch. x, sec. 19, it is said : " The courts have in some instances allowed a devise by implication, where it has been very apparent, in order to support and effectuate the intention of the testator ; but in cases of this kind the implication must be a plain, and not merely a possible or probable one; *for the title of the heir-at-law being plain and obvious, no words in a will ought to be construed in such a manner as to defeat it, if they can have any other signification."* See also 3 Lom. Dig. 148; Bac. Abr., tit. Wills (G.); 2 Min. Insts. 969 ; Schouler, Wills, sec. 479 ; *Wright* v. *Hicks,* 12 Ga. 155 ; S. C., 56 Am. Dec. 451 ; *Wilkinson* v. *Allen,* 18 How. 385 ; *Bradford* v. *Bradford,* 6 Whart. 244 ; *Fitch* v. *Weber,* 6 Hare, 145.

The doctrine of devises by implication was very fully considered in *Boisseaus* v. *Aldridges,* 5 Leigh, 222. In that case the decedent left a written instrument as follows :

"Not having made any will so as to dispose of my property, and two of my sisters marrying contrary to my wish, should I not make one, I wish this instrument to prevent either of their husbands from having one cent of my estate—say the husbands of my two sisters, Martha Aldridge and Dorothy Aldridge—nor either of them to have one cent, unless they should survive their husbands ; in that case, I leave them, to be paid out of the collection of any of my moneys, five hundred dollars each. Given under my hand and seal," etc. And on the paper was indorsed the following :

"*Memorandum,* to prevent Bennet Aldridge and Burwell Aldridge from having any part of my estate, that each might claim in right of their wives, without a will made by me."

It was argued by Messrs. Johnson and Leigh that, excepting the two contingent legacies, this writing was a devise and bequest by implication of the whole of the testator's estate to those persons who would take according to the statutes of descents and distributions, other than the two sisters and their descendants. The latter, they insisted, could have been excluded for no other purpose than to give the estate to others, and that if the testator did not mean that, he meant nothing.

But this view, though pressed upon the court with great earnestness and ability, was not adopted, and the decree of the lower court was affirmed, which declared that the right of a person to disinherit his heirs, or any one of them, exists, not as an abstract substantive power, but as the consequence of the power to leave his estate to others; that the paper in question was not a devise or bequest by necessary implication, and that it was evidently executed under the erroneous impression that if its author declared his intention to exclude his two sisters, the law would dispose of his estate among his heirs and next of kin, to the exclusion of the sisters mentioned therein.

It is true that two of the judges who delivered opinions in that case were of opinion that the instrument itself furnished internal evidence that it was not intended by the decedent to operate as a will any further than the contingent legacies therein bequeathed; but the principle that a man can disinherit his heirs only by unmistakably giving his estate to somebody else, was none the less emphatically asserted. To hold otherwise, it was said, would give to a testator the power to repeal the statute of descents and distributions, so far, at least, as it affects his own estate.

It was also held that if in every case in which a testator declares an intention to exclude his heirs, or any one of them, it is to be implied from that alone that he intends to devise away

his estate from such excluded person or persons, the principle that to disinherit his heirs he must give his estate to somebody else would be of no consequence, since it would give effect to the simple disinherison by holding it tantamount to a positive disposition.

Another analogous principle affirmed in that case, and which is very material to the present, is this: that while the intention of the testator, when consistent with the rules of law, is the polar star to guide the judicial expositor of a will, yet his intention to dispose of his estate must be indicated with legal certainty, otherwise effect as a will cannot be given to the instrument; the true inquiry being, not what the testator meant, but what the words used import.

Judge Brooke in his opinion said: " When a testator has devised his estate by will, and is not precise as to the persons who are to take, or as to the quantity of estate they are to take—from necessity, and to effectuate his intention to dispose of his estate, and not to leave it to the law to dispose of, courts imply his intent as to persons and the quantity of the estate they are to take. But when the question is, whether he intended *to devise his estate or not,* we are not authorized to imply that he does, unless it is a necessary inference from the language he uses."

He then referred to the case of *Denn* v. *Gaskin,* in which the testator gave his heir-at-law a disinheriting legacy, as it is called (*i. e.,* he gave him ten shillings), and then gave his nephews real estate, without adding words of inheritance. He began his will thus: " As to all such worldly estate as God has endued me with," etc., and the question was, whether by necessary implication from these words and the intended exclusion of the heir, the life estate given the nephews was enlarged into a fee. Lord Mansfield held that it was not, although he said he suspected extremely that the testator meant to give the devisees an estate in fee, as he had no other landed property, and had made them residuary legatees of his personalty, and had disinherited the

heir; but that if he did mean it, the misfortune was that *quod voluit non dixit.* And he added the remark, already quoted from his opinion, namely, that though the intention is ever so apparent, the heir-at law must of course inherit, unless the estate is given to somebody else. Accordingly, it was held that the fee, being undisposed of, descended to the heir, notwithstanding the intention of the testator to disinherit him; just as in *Boisseaus* v. *Aldridges,* the two excluded sisters were held entitled, not only to their contingent legacies, but to share in the residue of the estate as to which the testator died intestate, because, as was said, the statute gives the power to *devise,* and not in any other way to disinherit.

In *Wootton* v. *Redd's Ex'or,* 12 Gratt. 196, Judge Lee, speaking for the court, announced the same doctrine. He said: "Conjecture cannot be permitted to usurp the place of judicial conclusion, nor to supply what the testator has failed to sufficiently indicate. The law has provided a definite successor to the estate in the absence of a testamentary disposition, and the heir is not to be disinherited, unless by express words or necessary implication." The courts must, therefore, declare, if they can, he continued, "what intention the testator has expressed with sufficient legal certainty, not the intention which he may have entertained, but which he has failed sufficiently to manifest"; citing *Guy* v. *Sharp,* 1 M. & K. 589, 602; *Martin* v. *Drinkwater,* 2 Beav. 215. See also *Hatcher* v. *Hatcher,* 80 Va. 169; *Senger* v. *Senger's Ex'or,* 81 Id. 687; *Sutherland's Ex'ors* v. *Sydnor,* 84 Va. 880.

Let us now apply these principles to the present case. The paper in question is as follows:

"I, Hiram Coffman, of Rockingham county and State of Virginia, do make and ordain this to be my last will and testament, hereby revoking all other wills heretofore by me made. It is my will that my son, William H. Coffman, be excluded from all of my estate at my death, and have no heirship in the same, he

having become the heir to his mother's interest in her father's estate, and I, his guardian, have paid him, and am now about to make a final settlement with him, which will make as much to him, and probably more, than my estate will pay to each of my other legal heirs. In witness of this being my last will and testament, I hereunto set my hand and annex my seal this the 10th day of March, 1877.

"HIRAM COFFMAN [SEAL.]"

Now, this paper is certainly in the form of a will, and was declared by the decedent to be his will, and his intention to exclude his son, William, the appellant here, is as plainly manifested as it well could be. But is it in substance a will? Does it dispose of anything? The circuit court held that by implication it does. But is such a conclusion a necessary implication from the words used? Can the words be said to have no other signification? Taken together, do they clearly satisfy the mind, leaving no room to doubt, that the decedent meant *to dispose* of his estate? We think not. On the contrary, fairly construed, the instrument simply revokes all other wills theretofore made by the decedent, and excludes the appellant, *giving the reason therefor.* That is all, and to hold that it amounts to anything more would render futile the principle that a man can disinherit his heirs only by giving his estate to somebody else, and, by carrying too far the doctrine of devises by implication, would, by judicial construction, make a will for the decedent that he has not made for himself.

The record presents the case of a man who has a valuable estate and a wife and five children—a son by his first marriage, another son by his second marriage, and three children by his third and last marriage. All his children are equally near, and all, presumably, are equally dear to him. The eldest son has already inherited property, equal in value, we will say, to one-fourth of his father's estate. Accordingly, the father, wishing to do what he considers justice to all his children, writes a paper,

which he calls a will, and in that paper he says in substance that he wishes to disinherit his eldest son; and then, lest his motive be imputed to a want of parental affection (we will assume), he goes on and gives the reason for wishing to exclude him, and there he stops. He does not say his "other legal heirs" are to have the estate, but that his eldest son is *not to have* any part of it. And from this we are asked to imply that he intended to give, and consequently, as a legal conclusion, to hold that he did give the whole of his estate to his other children ; in other words, to hold that the reason assigned for wishing to exclude one of the children operates a disposition of the estate to the other children.

But this view is contrary to the plainest principles of the law, as we have already seen; for the question is, not what the decedent intended, but what has he said ? Not what he may have thought would be the result of what he wrote, but what is the legal effect of the paper? And although he may have intended to dispose of his estate, yet if he has not said so with legal certainty we cannot alter or add to his words, but our judgment must be, as Lord Mansfield's was in *Denn* v. *Gaskin, quod voluit non dixit ;* for we sit here not to make wills, but to construe them; not to make law, but to administer it.

It is quite probable the paper was written by the decedent under the erroneous impression that if he would declare his intention to exclude the appellant in the form of a will, the statute of descents and distributions would step in and do the rest; *i. e.,* that it would in effect make a better will for him than he could make for himself, by giving his estate to his other heirs and next of kin, and hence *he* made no disposition of it. His language, we think, shows this. Had he stopped at the point where he declares the appellant is to have no heirship in the estate, there could be no controversy, notwithstanding the paper, in the introductory part, is called a will. This is conceded, and yet what follows merely shows why he wished to exclude him, which is a very different thing from actually excluding him by

disposing of his estate, no matter what his intention was. For in such a case an intention not expressed or clearly manifested is equivalent in law to the absence of a testamentary intent altogether.

And herein lies the error of the decree complained of, namely, in giving effect to the intention of the decedent to exclude the appellant by making it tantamount to a disposition of the estate to the other children, which can no more be rightly done than the starting of a person on a journey can be said to be, in legal contemplation, the arrival of such person at the point of destination. And so here, the decedent intending to exclude the appellant, started out well enough in that direction, but, unfortunately for the appellees, he stopped before he reached the legal consummation of his purpose.

That, in order to effect that purpose, he would have gone further and given his estate in unmistakable terms to his other children, if the necessity for so doing had occurred to him, is also probable, for it is impossible to read the paper in question without perceiving that the thought uppermost in his mind was to exclude the appellant. But the idea that under any circumstances he would have done so, rests upon conjecture merely, which is not necessary implication, but the opposite, and can never alone support a devise or bequest. In *Jones* v. *Morgan,* Lord Mansfield said that " conjecture is, when you suppose what would have been the testator's meaning if he had had the whole case before him, and what, if he had thought of such an event, he would have said upon it." And he added, "you are not to conjecture what he would have done in an event he never thought of; that will not do." Fearne, Rem. App. 576.

Every man, it is true, is presumed to know the law, but to say that the decedent must be presumed to have known that the mere exclusion of the appellant would not operate to give the estate to anybody else, and *therefore* that he meant to give, and consequently did give, the estate to his remaining children is, substantially, to assert a proposition which has been emphati-

cally repudiated by this court, and by all courts where our system of jurisprudence prevails.

Moreover, no executor is appointed by the paper in question, nor is there any mention of the debts of the decedent, or of the widow's dower or interest in the estate, or any direction as to how the estate shall be divided or disposed of; and while it is true the law provides for the payment of debts, the assignment of dower, etc., yet the omission to make mention of any of these matters is a circumstance in the case not without significance, as tending to support the view already expressed. Persons often die intestate, but it is certainly not usual, nor can it hardly be said to be natural, for a man having a valuable real and personal estate to leave a will disposing of it, and make no specific devises or bequests, or give any direction touching the estate whatever. And here there is no direction as to anything, but simply a revocation of previous wills and an intended disinherison of the appellant, because, in the language of the decedent, the appellant's inheritance from another source " will make as much to him, and probably more, than my estate will pay to each of my other *legal heirs*"—words which of themselves import intestacy, being emphatically words of inheritance. And as to the word "pay," upon which so much stress is laid by counsel for the appellees, that is quite as applicable to the distribution of an estate of an intestate as to any other.

Again, suppose the appellant had died before the decedent, leaving descendants. What is there in this paper to prevent those descendants, as heirs-at-law of the decedent, from sharing in the estate? There is certainly nothing that would expressly exclude them, and this circumstance also strengthens the view that the paper was written, not to dispose of anything, but simply to revoke previous wills and to exclude the appellant, without going, or intending to go, further than to give the reason.

Our conclusion, therefore, is that the paper is not the will of the decedent; that if he meant to dispose of his property, he

has not said so with legal certainty; and, consequently that at his death his estate passed to his heirs and next of kin, including the appellant. It is certainly safer, and more consonant with public policy, to closely adhere to settled principles, than in doubtful cases to interrupt the course of descent and distribution of estates which the statute prescribes in cases of intestacy; for the statute, which has been said to be a transcript of the human affections, is a wise and just one, and ought to govern in all cases not plainly without it.

In *Boisseaus* v. *Aldridges* it was said by Judge Brooke, and reaffirmed by the court, without dissent, in the recent case of *Sutherland's Ex'ors* v. *Sydnor*, 84 Va. 880, that property is the creature of the law, and can be disposed of at all, only because the law permits it to be done in certain modes. And hence the result in the present case imposes no hardship on any one, as it puts all the children of the decedent on the same footing with respect to his estate, simply because their father has not availed himself of the permission that the law gave him to dispose of it differently.

The decree must therefore be reversed, and a decree entered here in conformity with this opinion.

RICHARDSON, J., dissented.

DECREE REVERSED.