## No. 10,172.

### TWILLEY *v.* DURKEE.

Decided December 4, 1922. Rehearing denied January 8, 1923.

Proceeding involving the validity of a will. Judgment for contestant.

### *Affirmed.*

1.. WILLS—*Revocation—Execution.* Under the provisions of section 7072, R. S. 1908, concerning the revocation of wills, a will which expressly revokes former wills must be signed by the testator *in the presence* of two or more witnesses, otherwise it will be invalid, and this is true even if the will be a disposing as well as a revoking document.

2.    *Revocation.* Under our statute, section 7072, R. S. 1908, no former will can be revoked by a writing unless the revoking writing is itself a will.

3.    STATUTES—*Adoption from Other States—Decisions.* Where a Colorado law is adopted from the statutes of another state after the appellate court of that state has construed it, the construction of the foreign state should be adopted by the Colorado courts.

4.    WILLS—*Revocation.* A former valid will executed as the statute prescribes, cannot be revoked by a subsequent invalid will.

5.    *Execution.* A will devising personal and real property, and containing no express revoking clause, need not, under the pro-

visions of section 7071, R. S. 1908, be signed *in the presence* of two or more witnesses.

6. ADJUDICATED QUESTIONS—*Cases Distinguished.* *Freeman v. Hart,* 61 Colo. 455, a will case, distinguished from the one under consideration.

7. OBITER DICTUM—*Effect.* Where a decision of a case by the appellate tribunal does not require the expression of an opinion upon a question, a ruling thereon is *obiter,* and not a precedent in a subsequent case where the question is involved.

8. WILLS—*Defined.* The word "will" in section 7072, R. S. 1908, concerning revocation of wills, is used in the sense of a testamentary instrument which disposes of the testator's property, to take effect at his death; a written instrument, unless it so disposes of property, is not a will within the meaning of the statute.

9. *Contest—Burden.* Upon a proponent who presents a will for probate, rests the burden of showing its execution in accordance with the requirements of law.

10. *Former Will—Existence.* The express revocation of a former will, is at least prima facie evidence that such a former will was in existence at the time the will containing the revocation clause was made, and where the question becomes material, it is incumbent upon the proponent to show the non-existence of a former will.

The contention in the present case, that no former will existed, held not supported by the record.

11. *Execution.* A will, so far as execution goes, is an entirety, and if defective because not executed in accordance with the requirements of law, it is void for all purposes.

*Error to the District Court of El Paso County, Hon. Arthur Cornforth, Judge.*

Mr. P. M. KISTLER, for plaintiff in error.

Messrs. CHINN & STRICKLER, Mr. J. ALFRED RITTER, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

CORA E. H. TWILLEY, as the executrix, and a legatee, and William Shaw Twilley, her son, a minor, by his *guardian ad litem*, as a legatee, in what purports to be the last will and testament of Rose M. Durkee, deceased, filed such instrument in the county court of El Paso County, Colorado, and asked to have it admitted to probate. In due course Charles C. Durkee claiming to be, as he was and is, the son and sole surviving heir at law of decedent, appeared as contestant and filed his *caveat* wherein his objections to the probate are alleged to be that at the time the instrument was executed the testatrix did not have the mental capacity, or sound and disposing mind and memory, to make a will; insane delusions; that the proposed will, though signed by her, was not her will; that her signature was procured as the result of the undue influence over her possessed and exercised by one of the proponents and her husband, and that any testamentary disposition of her property which testatrix, if she was then of sound mind and memory, and exercising her own free will, would have made, would be essentially different from the one presented for probate.

On the hearing of the contest before a jury the county court directed the jury to return a verdict, which it did, that the will proposed was the last will of testatrix, on which verdict the county court by its judgment admitted it to probate.

Seasonably, and as provided by our statute, contestant perfected his appeal from this judgment to the district court of El Paso County. The hearing there was *de novo*, as our statute provides, upon the same issues tendered in the county court, and at the close of the proponents' evidence, which affirmatively showed that testatrix did not sign, in the presence of attesting witnesses, the will which expressly revoked former wills, the district court, without receiving evidence as to the other objections, ordered the jury to return a verdict in contestant's favor, and upon such returned verdict judgment was rendered declaring the will invalid and denying probate. It is to the district

court's judgment, that William Shaw Twilley, Jr., a legatee, and one of the proponents under the will, by P. M. Kistler, his *guardian ad litem,* is prosecuting this writ of error, the executrix, the other proponent, not joining in this writ.

The will was signed by testatrix out of the presence of the three witnesses who attested it. She presented this instrument to these three witnesses, declaring it to be her last will, having previously signed it, and asked them to attest it, which they did in her presence and in the presence of each other. Containing, as it did, an express declaration of revocation of "all prior wills made by me", the district court was of the opinion that, as to its execution, the governing statute, section 7072 R. S. 1908, made it invalid, as the result of defective execution as just stated. If this statute is applicable, the will is invalid, for thereby signing by a testator in the presence of two or more witnesses is imperative where the proposed later will expressly revokes a former will. This statute reads:

"7072. Revocation of Wills. Sec. 33. No will shall be revoked otherwise than by the subsequent marriage of the testator, or by burning, tearing or obliterating the said will, by the testator himself or in his presence, by his direction and consent, or by some other will or codicil in writing, declaring the same, signed by the testator in the presence of two or more witnesses, and by them attested in his presence, and no words spoken shall revoke or annul any will in writing, executed as aforesaid in due form of law."

The only question upon this review is one of law whose resolution depends upon the construction and applicability of the foregoing section, in connection, possibly, with the preceding section 7071 which does not require the signing by a testator in the presence of the witnesses of a will, which contains no revoking clause, and by which only property is devised or bequeathed. *Freeman v. Hart,* 61 Colo. 455, 466, 158 Pac. 305.

In his opening brief counsel for plaintiff in error thus

states the question for decision:

"Does Section 7072, prescribing certain formalities for the execution of a *revoking* will or codicil, apply to a last will and testament which has for its general scheme and primary purpose the testamentary *disposition* of the testator's property; or, is that section limited in its application to such wills and codicils as have for their *sole* purpose the complete revocation of some former will?"

The question might be concretely, as well as more accurately, stated thus: "Did the failure of the testatrix to sign the will in the presence of two or more witnesses make it invalid, even though she orally declared to them that it was her last will and testament before they attested it in her presence?"

Before the English Statute of Wills, the right of testamentary disposition did not extend to real, but only to personal, estate and, as to the latter, to a limited extent only. 1 Redfield on Wills, (4th ed.), p. 3. The will of personal property might be oral or written, and revocation could be either by the spoken word or by some writing. By the Statute of Wills real property was made the subject of a devise, but only by a written will. As the statute was silent as to the method of revocation, the courts held that written wills devising real property might be revoked by an oral declaration. Such ruling, unquestionably sound, the language of the statute considered, resulted, as is well known, in many fraudulent transactions and was the source of numerous perjuries. Appeals to the English Parliament to suppress and cure these evils resulted in the Statute of Frauds and Perjuries passed in 1677, which, with more or less modifications, has been carried into the laws of most of the states of our Union. Section 6 of that statute provides the formalities required for the revocation of wills. By its terms, as originally passed, no devise in writing of lands, nor any clause thereof, was revocable otherwise than by some other will or codicil in writing, *"or other writing"* declaring the same, or by burning, cancelling, tearing or obliterating;

but all devises of lands once made remained and continued in force until burned, cancelled, etc., or unless the same was revoked by some other will or codicil in writing, *"or other writing"* of the devisor, which must be signed by him in the presence of three witnesses declaring the same. It will be observed that our section 7072 is strikingly similar to the original English section, but one very important difference, which, in our judgment is controlling in the present case, is the omission in our statute of the words "or other writing", which was in the original English section. By the English section a former will might be revoked by a writing which is not a will, while under our section 7072, no former will can be revoked by a writing, unless the revoking writing is itself a will.

In borrowing this section most of our states have retained the words "or other writing" so that, in such states, a will may still be revoked not only by "some other will or codicil in writing", but also by some *"other writing"* not a will or codicil. The only states of the Union, so far as we are advised, though there may be others, which have, in adopting the substance of section 6, omitted the words "or other writing", are Connecticut, Illinois and Colorado, whose legislatures have passed statutes restricting the method of revision, when a written instrument is employed, to wills or codicils. That is, by this method, only by will or codicil, and not by "some other writing" not a will, may a former will be revoked under the provisions of our statute. Our statute is an exact copy of that of Illinois and was passed by our General Assembly after the Supreme Court of that state had construed it. *Charles v. Eshleman*, 5 Colo. 107. We said in this case that the construction of the Illinois courts should be adopted. See also: *In Re Estate of Carey*, 56 Colo. 77, 136 Pac. 1175, 51 L. R. A. (N. S.) 927, Ann. Cas. 1915B, 951. The English courts, with practical unanimity, have held that "signed in the presence of three or four witnesses", found in the original statute, referred to "other writing". *Ellis v. Smith*, 1 Ves. Jun. p. 11. In our section 7072, *supra*, "other writing"

was omitted but "signed in the presence of two or more witnesses" is retained. It would seem necessarily to follow that in our statute the words about signing, above quoted, must refer to "wills or codicils", as there is nothing else to which they can refer, and we may not presume that our General Assembly idly used the phrase. If this is true, and we think it is, the English courts doubtless would hold, under a statute like ours, under the principle announced in *Ellis v. Smith, supra,* that where a will, containing an express revoking clause, is not signed by the testator in the presence of two or more witnesses, it is invalid and does not have the effect of revoking former wills which it may have been the intent of the testator to accomplish. It is also probable that the English courts would hold, as we think they have already ruled, that a former valid will, that is, one executed as the statute prescribes, cannot be revoked by a subsequent invalid will. The parties herein, in their briefs, proceed upon such assumption.

Applying this doctrine, which we believe to be sound, we think that the case before us clearly comes within the purview of section 7072. The Supreme Court of Connecticut, under a similar statute, so decided in *Peck's Appeal,* 50 Conn. 562, 564, 47 Am. Rep. 685. The Supreme Court of Illinois, under a statute exactly like ours, in the following, among other cases, directly, or indirectly, reaches the same conclusion: *Stetson v. Stetson,* 200 Ill. 601, 609, 616, 66 N. E. 262, 61 L. R. A. 258; *Moore v. Rowlett,* 269 Ill. 88, 90, 109 N. E. 682, L. R. A. 1916C, 89, Ann. Cas. 1916E, 718; *Limbach v. Limbach,* 290 Ill. 94, 124 N. E. 859; *Meckel v. Johnson,* 231 Ill. 540, 83 N. E. 209; *Wardner v. Bap. Mem. Bd.,* 232 Ill. 606, 83 N. E. 1077, 122 Am. St. Rep. 138; *Terhune v. Commer. Nat. Sav. Dep. Co.,* 245 Ill. 622, 92 N. E. 532; *Abdill v. Abdill,* 295 Ill. 40, 128 N. E. 741.

It would unduly prolong this opinion to discuss or analyze the opinions in these cases. It is sufficient for our present purpose to say that they clearly distinguish between the scope and effect of a revocation in jurisdictions

where the same may be accomplished either by a subsequent will or codicil, or by some *"other writing"* not a will, and a revocation which is attempted under statutes like ours, which provide that a revocation of a will, if a writing is employed, must be by a will or codicil, and not otherwise. These Illinois cases are also authority for the proposition that where a later will contains a .clause expressly revoking some former will, and other clauses disposing of the .testator's property, the will itself is to be construed as an entirety, and, thus construed, is invalid unless it is signed by the testator in the presence of two or more witnesses, as required by the Illinois statute which is in the same language as ours. That is, although statutes like sections 7071 and 7072 of our Revised Statutes are, to some extent, *in pari materia,* a will devising personal and real property, and containing no express revoking clause, need not, under section 7071, be signed *in the presence* of two or more witnesses; yet if the will disposes of the testator's property, and in addition contains a clause expressly revoking a former will, it must be signed by testator, in the presence of the witnesses, as prescribed by section 7072 relating to the revoking of wills.

This opinion would stop here were it not that proponent, with plausibility and evident sincerity, argues that the question before us has been otherwise decided.by this court in *Freeman v. Hart, supra,* We think not. In the Freeman Case Brownell's will, as presented for probate to the county court of Weld county, consisted of one original will and four codicils firmly attached thereto. After the district court, on appeal, admitted to probate the will and one or more codicils, as one entire will, the objectors brought up its judgment for review to this court. They assigned as the principal error, which we there said was the important question for consideration, that the district court erred in admitting the third codicil to probate, being, as it was claimed, a revoking clause of the entire will, or part thereof, to which it was attached, and, therefore, not having been signed in the presence of the attesting wit-

nesses, should have been held invalid, for defective execution under section 7072. We there first determined that the third codicil not only did not purport to, and did not, revoke the earlier or original will, but on its face purported to be, and was, an addition to, and a part of, that will, and that any disposition thereby made of the testator's property, inconsistent or in conflict with any part of the earlier will, was brought about by a change in his circumstances, fully set forth in the opinion; and while the third codicil, insofar as it was different from the earlier instrument—and it was entirely consistent with the major part thereof—must prevail as the latest expression of the testator's will, still it was properly a part of, and, together with the original instrument and the first codicil, constituted the entire will; and that no purpose was manifested by the testator to cancel or revoke in its entirety the original will. Such being our decision there that the testator did not intend to, and did not, revoke a former will in whole or in part, it was clearly right; but it is equally clear that the question, as to what is the proper way to execute a will that expressly revokes a former will *in toto,* was not then before the court. The will presented there, not purporting even to revoke a former will, did not, as to its execution, come within the purview of section 7072, which does require, but of section 7071, which does not require, the signing by the testator in the presence of the witnesses. Proponents, however, seize upon certain expressions of Judge Bailey's opinion in the Freeman case which, removed from their context and without heeding the facts of that case, give some color to their contention here, that only such wills as have for their sole purpose and effect the complete revocation of some former will are within the provisions of section 7072; and that only "revoking" wills, as distinguished from "disposing" wills, to which latter class the will now before us belongs, come within its scope, and that this section does not apply to a will in which "disposing" and "revoking" clauses are combined in the same instrument,

The language of Justice Bailey's opinion, upon which proponents rely, is, for convenience, here reproduced:

"The language of section 7072, *supra*, plainly indicates that only such testamentary instruments as have for their sole purpose the complete destruction or obliteration of a will fall within its provisions. That such is the purpose and intent of the statute is manifest from the significant expressions used therein. It provides for the revocation of a will by burning, tearing or obliterating. These terms must mean and refer to the utter annihilation and destruction of a will. Then the statute follows with the further provision that a will may be revoked, that is set aside and annulled *in toto*, by some other will or codicil in writing declaring the same, that is declaring the total revocation and destruction thereof. Only instruments having such effect and purpose, and such effect and purpose alone, fall within the purview of section 7072, *supra*. Clearly the third codicil is not such an instrument. It was therefore entitled to probate and record, under the proofs, as having been executed in conformity with section 7071, R. S. 1908." * * *

"There is no indication that the testator had the single desire and purpose to annihilate and wipe out his original will. There is no provision or declaration whatever in the third codicil which shows that there was then present in the testator's mind any such intent. A testamentary instrument whose sole effect is the entire destruction, made with the manifest intent and purpose to so destroy, is the only one to which our revocation statute properly applies."

The only question actually decided in the Freeman case, so far as concerns the method of execution of a will, was that a testamentary instrument, which does not revoke a former will *in toto*, falls within the purview of section 7071, which does not require the signing by the testator to be in the presence of the attesting witnesses, and not within the purview of section 7072 which makes such signing imperative in a will which works an entire destruction of former testamentary instruments. The facts of

the Freeman case are essentially different from those of the instant case. Here the Durkee will expressly revokes all former wills *in toto,* and it is immaterial whether or not there is any conflict between them. *Stetson v. Stetson, supra.* This and other courts frequently have occasion to refer to the doctrine that general expressions of an opinion are to be interpreted in the light of the facts of the particular case. The facts of the Freeman case did not require an expression of opinion upon the method of executing a later will which revokes a former one, either in whole or in part, and a ruling thereon, if any was made, is *obiter,* and not a precedent in a subsequent case, where such question is involved. In the first place, we observe that we do not believe the court intended to establish a rule for cases like the one before us. Judge Bailey, who studied the briefs in the Freeman case, must have read, at least, some of the English, Illinois and Connecticut decisions on this general subject. He knew of the different methods of revocation, under dissimilar governing statutes, and was not laying down a rule to govern a case not before the court, much less announcing a doctrine, such as the proponents here contend for, which is directly in conflict with the principles controlling the decisions of Illinois and Connecticut under similar statutes. Certainly he would not have done so without showing their inapplicability, or declining to follow them.

These excerpts from the opinion of Judge Bailey were the answer of the court to the contention of the objectors that the Brownell third codicil effected a revocation, in whole or in part, of the testator's earlier will, since its disposition of property was repugnant to the disposition of the former instrument. The quoted language should, therefore, be construed in the light of the facts then before the court. The conclusion in the Freeman case, so far as concerns the revocation of a former will, was, that since the legislature provided two methods one by burning, etc., the other by a written will, and as the burning consumed the paper on which the earlier will was written, and with

it the completed will itself, this language meant utter destruction and annihilation, whether revocation was effected by physical force, or by the execution of a later will by the testator.    In the absence of a provision in the revoking statute to the contrary, courts will not assume that the legislature intended solely and only to effect an entire destruction by the first, and either a partial or entire destruction by the second, method.

Justice Bailey said that if the third codicil was repugnant to the former will, it prevailed, but as it was merely inconsistent with a part only of the former instrument, it fell within section 7071, because section 7072 applied only and solely to wills having for their sole purpose and effect the annihilation of former wills in their entirety. When the opinion further states:   "Only instruments having such effect and purpose, and such effect and purpose alone, fall within the purview of section 7072", and that a writing "whose sole effect is the entire destruction, made with the manifest intent and purpose to so destroy, is the only one to which our revocation statute properly applies", he intended to, and did, convey the thought that, so far as concerns revocation, only such testamentary instruments as entirely, not partially, destroy an earlier will fall within section 7072.    Otherwise stated, Judge Bailey's thought was that, to bring a testamentary instrument within the scope of section 7072, the later will that revokes a former one must work its entire destruction, and such must be its sole purpose and effect, and a later will which does not have in view such sole purpose and effect, but only partially revokes or merely contains clauses repugnant to some of the provisions of the earlier will, is without the section.    If this language is to be interpreted as authority for proponent's contention, it is *obiter* for the reason already stated.    If interpreted as we have indicated it should be, it is consistent with the provisions of section 7072 and in harmony with the Illinois and Connecticut decisions under similar statutes.

But it is a further contention of the proponents that a

will which combines clauses or items, one of which expressly revokes a former will, and the others contain dispositions of the testator's property, is not affected by section 7072, and they say that this evidently was the thought in the mind of Justice Bailey when he said that a testamentary instrument whose sole effect is the entire destruction of a former will is the only one to which our revocation statute properly applies. We do not think so. The statute itself does not say that a will which has both revoking and disposing clauses is not governed by it. The court did not say so in the Freeman case. If such was its judgment it probably would have said, which it did not, that section 7072 does not apply where a revoking clause is combined with disposing clauses in a later will. A will is an entirety and if it contains both revoking and disposing clauses, it is as much a "revoking", as it is a "disposing", will. The proper description of such a testamentary instrument is that it is a will which not only disposes of property, but expressly revokes former wills. The language quoted from Justice Bailey's opinion, properly considered, is only to the effect, so far as concerns the question of revocation, that only and solely such wills as effect an entire destruction of a former will are within the purview of section 7072. When the revoking instrument is a later will, the fact that it contains, in addition to the revoking clause, other clauses disposing of the testator's property, is immaterial it still falls within the purview of the section.

Indeed, we think that there is no authority for saying that wills are of two kinds: "revoking", and "disposing" wills. We take from some of the text writers the definition of a will. "A will is an instrument by which a person makes a disposition of his property to take effect after his decease." 1 Jarman on Wills, 6th ed., p. 27. Chancellor Kent, in 4 Com. p. 501, defines a will as: "A disposition of real and personal property to take effect after the death of the testator." "A last will and testament may be defined, as the disposition of one's property, to take effect

after death." 1 Redfield on Wills, p. 5.   Page on Wills, section 2, gives a similar definition.

We think the word "will" in section 7072 is used in the sense of a testamentary instrument which disposes of the testator's property, to take effect at his death.   A written instrument, under our statute, unless it disposes of property, to take effect at the testator's death, is not a will within the meaning of our statute.   In *Coffman v. Coffman*, 85 Va. 459, 8 S. E. 672, 2 L. R. A. 848, 17 Am. St. Rep. 69, it was held, in accordance with the foregoing definitions of a will, that an instrument in the form of a will and purporting to be a will, and excluding a son of the maker from participating in his estate, yet making no disposition thereof, was not a will.   In Re. Williamson's Will, 6 Ohio Dec. 507, in a well considered opinion, it was held that an instrument which does not make a disposition of property, is not a will in a legal sense but merely a declaration of a wish.

*Brenchley v. Lynn*, 2 Rob. Eccl. 441, on page 458, discusses this question, and we think the reasoning warrants the declaration that an instrument which merely provides for the revoking of a former will is not a will in the sense in which section 7072 employs the word.

We have been cited to no authority by proponents which forbids the combination in one instrument of revoking and disposing clauses, nor to any authority which says that only a will which contains solely a revoking clause, and nothing else, is within the purview of section 7072.   It is well, to avoid misapprehension, to add that we are now concerned only with a will which contains an express revocation of a former will.   The Illinois courts hold that their revocation statute, which is the same as ours, applies only to wills which by express declaration revoke former wills. They also hold that a revocation by implication may result, as where the later will contains dispositions of property irreconcilably repugnant to provisions of the former instrument.   *Phillippe v. Clevenger*, 239 Ill. 117, 87 N. E. 858, 16 Ann. Cas. 207.   We withhold an expression of

opinion as to whether, under our statute, there may be a revocation by implication, for there is no such case before us. But if an instrument, which makes no disposition of property, can, in any circumstances, be considered a will, as that word is used in our statute, it is not the only kind of a will to which section 7072 refers.

It should be borne in mind that, under the English Statute of Frauds and in some of the states of this Union, partial revocation of a former will is permissible. But in the Freeman case this court held that, under our statute, a partial revocation is not contemplated. It is also true that, under the English statute, revocation, by "a writing other than a will or codicil", was permissible, and in the states of the Union which still retain the quoted words in their Statute of Frauds, the English decisions are followed. There appear in some English and American decisions, and in the text books, statements that a written instrument effecting the revocation of a will, need not be of a testamentary character. These expressions correctly state the law in those jurisdictions which retain in their revoking statutes the words "other writing." Proponents' contention, therefore, that a revocation of a former will may be effected by a writing, which is not testamentary in character, is contrary to the provisions of our statute, and the English and American decisions cited in support of their contention are not applicable. For this court so to hold would be to interpolate "other writing" into section 7072, would be judicial legislation in face of the fact that our General Assembly deliberately omitted these words in copying the English Statute.

The only reference in the brief of proponents to the existence or non-existence of a former will, is the following: "It will not escape this court's attention that there is no evidence whatsoever in this record of the existence of any former will." It will be observed that the dissenting opinion of Mr. Justice Denison is based, in part, at least, upon the assumed fact that no former will was discovered after the death of the testatrix, and, therefore,

this court must presume that, if the testatrix had made a former will, it was destroyed by her after its execution and, therefore, she died, not intestate, but testate—testate by the present will, if the previous will is not discovered —testate by the previous will, if it is discovered. Proponents themselves have not drawn any such conclusion or made any such assumption. This case was tried below by both parties, and decided by the trial court, on the theory that if the proposed will, as to its execution, is within the purview of section 7072, it is invalid and not entitled to probate. Neither party has asked to have it determined here on some other theory, and we should not, of our own volition, express our opinion upon an imaginary case, or one on which there is no evidence. Proponents had full opportunity. to show, if they could, that testatrix never made a former will, or, if so, that it was destroyed by her. There was a sufficient showing before the trial court that there was a former will, and there was not a syllable of evidence even tending to show that it had been destroyed. That such thought as the dissenting opinion expresses, was not present in the minds of proponents, is apparent from the quotation from their brief hereinabove made, and, if possible, is made still clearer from their further statement of the question for decision upon this review. They say: "Thus the question and the only question presented to this Court is: Does the subsequent *'will or codicil declaring the same'* mentioned in section 7072, contemplate and comprehend also, *'All wills by which any property, real or personal, is devised or bequeathed,'* mentioned in section 7071, when a revoking clause is inserted?"

There are, however, aside from these admissions of proponents, several answers to the contention. Upon the proponent who presents a will for probate rests the burden of proof to show its execution in accordance with the requirements of the law. *Snodgrass v. Smith,* 42 Colo. 60, 63, 94 Pac. 312, 15 Ann. Cas. 548; 40 Cyc. 1272.

.A recital in a will of the residence of the testator, while

not conclusive, is a circumstance indicating his domicile at the time of his decease. *Corrigan v. Jones*, 14 Colo. 311, 314, 23 Pac. 913. Likewise, an express revocation of a former will is, at least, *prima facie* evidence that such a former will was in existence at the time the will containing the revocation clause was made. Mrs. Durkee wrote the proposed will herself in which she declared expressly that she revoked all former wills. . The record here presents a case where it was incumbent upon proponents to show the non-existence of a former will. There was no evidence of this fact. On the contrary, the recital in the will that the testatrix revoked former wills is *prima facie* evidence that such a will was in existence. The assumption, therefore, that, if a former will was once in existence, it was destroyed by the testatrix in her life time, is contrary to the record, and, without such assumption, the will presented was not entitled to probate. Such assumption that no former will was found is not borne out by this record. There is no evidence at all that any search was made of the effects of the testatrix to discover a former will, and there is no evidence that there was a failure to find it. If in fact an unsuccessful search was made, it was incumbent upon the proponents to introduce evidence of it, which was not done. The mere fact that the will proposed was produced by those who received legacies thereunder illustrates the wisdom of the rule that requires them to make, at least, some showing of the non-existence of a former will, which is alleged to have made dispositions of the property of the testatrix essentially different from the dispositions of the will presented. No such opportunity should be afforded to interested parties to foist upon a court a defectively executed will, and the temptation for them to act in accordance with their own interests is too great to permit of a relaxation of the inflexible rules relating to execution of wills.

Another answer to the contention is that, where there is a defective execution of a will, the defect attaches to the entire instrument. A will, so far as execution goes,

is an entirety. If defective because not executed in accordance with the requirements of the law, it is void for all purposes. The rule sometimes enforced that the courts will endeavor to reconcile apparently conflicting parts of a will, does not apply to a failure to comply with the law as to execution. This will was not entitled to probate because it was a void will, not being executed according to the requirements of our statute. "A will must be executed in accordance with the statutory requirements; otherwise it is entirely void." 40 Cyc. 1097; *Doran v. Mullen,* 78 Ill. 342; *In Re. Walker,* 110 Cal. 387, 390, 42 Pac. 815, 30 L. R. A. 460, 52 Am. St. Rep. 104.

In the Walker case it is said: "It is not for courts to say that these requirements, or any of them, are mere formalities which may be waived without impairing the status of the instrument." *In Re. Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013, is an able discussion of the exact question here determined, and the court expressly held, as did the Supreme Court of California in the Walker case, that a will, which is not executed as the statute requires, should not be admitted to probate. The court also held, as above stated, that the rule governing the interpretation of wills, when admitted to probate, cannot be invoked in the construction of the statute regulating their execution, citing *In Re. O'Neil,* 91 N. Y. 516. In the case of execution the courts do not consider the intent of the testator, but that of the legislature. In the Noyes case is a collection of numerous authorities. They are to the effect that when a will is not executed in accordance with the requirements of the law, it is not entitled to probate, and the courts will not hold the will valid for one purpose and invalid as to another. As to the execution, the will is an entirety, and no attempt will be made by the courts in their effort to give expression to the will of the testator, to hold the will valid as to one, and invalid as to another, of its purposes.

The opinions of this court disclose that it is not disposed, on mere technical grounds, or because it considers the dispositions of a will unwise, or contrary to natural justice,

to circumvent or thwart the plain intent and wish of a testator who has executed his will in the way designated by our statute. Revocation of a former will can be made only in the ways authorized by our statutory law. When the method employed, which the statute authorizes, is by a subsequent will, a revocation, to be effective, must be expressly declared, and the later will, which destroys a former will, must be executed in accordance with the statute relating to revocation of wills. Mrs. Durkee's will, containing an express clause of revocation, was not executed in accordance with the provisions of our statute applicable to wills of this character, was void and should not be admitted to probate.

The able briefs of counsel for both parties, and the concise, but perfectly clear and satisfactory, abstract of the record have materially lightened our labors.

The judgment of the district court, which denied the probate of this will, was right and it is affirmed.

MR. CHIEF JUSTICE SCOTT, MR. JUSTICE ALLEN and MR. JUSTICE WHITFORD concur.

MR. JUSTICE TELLER, MR. JUSTICE DENISON, and MR. JUSTICE BURKE, dissent.

MR. JUSTICE DENISON, dissenting.

R. S. section 7071 is as follows: "All wills by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and signed by the testator, or by some one in his presence and by his direction, and attested in the presence of the testator, by two or more credible witnesses."

Section 7072 as follows: "No will shall be revoked otherwise than by the subsequent marriage of the testator, or by burning, tearing or obliterating the said will, by the testator himself or in his presence, by his direction and consent, or by some other will or codicil in writing, declaring the same, signed by the testator in the presence of two or more witnesses, and by them attested in his pres-

ence, and no words spoken shall revoke or annul any will in writing, executed as aforesaid in due form of law."

The testatrix left an instrument purporting to be her will, which contained testamentary matter and also the usual clause revoking all former wills. The effect of the majority opinion is that this instrument is not a valid will because the revocation is not executed according to section 7072, that the defect in the revocation makes the whole instrument invalid. I cannot assent to that proposition.

I think that the case of *Freeman v. Hart,* 61 Colo. 455, 158 Pac. 305, controls this one, and I do not think that the statement therein that section 7072 refers to wills whose sole purpose is revocation is a *dictum.* It is one of two reasons given for the decision. If one is a dictum the other is and then the decision is left without reason.

I agree that in order to revoke a previous will the revoking will must be signed in the presence of the witnesses, as provided by section 7072; but that section does not say that no will containing a revocation shall be valid unless so signed, but merely says that no revocation shall be valid unless so signed. If then, the witnesses sign in the presence of the testator, according to section 7071, the testamentary part of a will should be held valid, even though not signed by him in the presence of the witnesses, unless a previous will appears.

I cannot find any decision holding otherwise. The Illinois cases, as I read them, do not; and, if they did, while our section 7072 is like the corresponding Illinois section, yet their section corresponding to our section 7071 requires proof of the signature of the testator in the presence of the witnesses, and therefore, of course, the testamentary part of a will executed in violation of that requirement would be invalid, whether such will contained a revocation clause or not. Illinois decisions, therefore, cannot be in point in Colorado. Neither do I find that the Connecticut case, *Peck's Appeal,* 50 Conn. 562, 47 Am. Rep. 685, supports the proposition, or that the Connecticut statutes are like ours.

It is said that the attempted revocation is prima facie evidence that a previous will existed. Whatever the general rule may be I cannot assent to that proposition in this case for several reasons:

1. It revokes all previous *wills* not a previous will. This shows that the testatrix was using the phrase in the ordinary perfunctory way in drawing wills, usual in printed forms. It is so improbable as to be incredible that more than one previous will existed unrevoked. She therefore does not intimate that a previous will existed at the date of the so-called attempted revocation.

2. But assuming that the said clause does amount to evidence of a previous will, it can only be of a will existing at the date of the execution of the subsequent one. If the revocation is evidence of a previous will it is at least equally cogent evidence of an intent and purpose to revoke it, and it is to stultify the clause itself to say that it is at once evidence of the existence at the former date of a previous will and an intention to revoke it and also of its existence at the testatrix' decease.

3. The clause in question, then, so far from raising a presumption that such a will existed at her death, when taken with the fact that none was produced, is strong evidence that she had destroyed it, the most natural and probable thing for her to do with a will which she believed she had revoked.

These arguments show that the proposition that proof of search for the will is necessary to overcome the presumption of its existence is unsound in this case.

In the present case, then, we have an instrument purporting to be a will, executed out of the presence of the witnesses yet in accordance with section 7071. Such instrument without the revocation clause would be unquestionably valid. There is nothing in section 7072 to make the testamentary part of it invalid, even with the revocation, therefore it is all valid except the revocation. Assuming that the revocation indicates the existence of a previous will at the time of the execution of the present

one, since that was not produced after the death of the testatrix, it must be presumed to have been destroyed by her after the execution of the supposed revocation, therefore she died, not intestate but testate,—testate by the present will if the previous will is not discovered,—testate by the previous will if it is discovered.

The majority opinion suggests that the proponents do not rely upon the point above expressed. We ought not to be controlled by their conception of the questions presented for determination. It is said we must not consider what they do not rely on. It should rather be said we may decline to consider it. Rule 34. Be that as it may, if we do not consider it we should not decide it, and the majority opinion does so and forecloses the question.

It is also claimed that since the will is insufficient as a revocation it is insufficient as a whole and the rule is invoked that a will insufficiently executed in one respect is entirely bad. This will, however, is sufficiently executed under section 7071, lacking nothing, and I am not willing to extend that rule to say that the insufficient execution of a formal clause of revocation destroys the whole will though no previous will appears.

In the last analysis the decision seems to me to say that because the testatrix left an unrevoked will she will be treated as an intestate.

I am authorized to say that MR. JUSTICE TELLER and MR. JUSTICE BURKE concur in this dissent.