No. 21960.

CLARENCE W. BAILEY, JR., AND BEATRICE BAILEY SHMOCK, ALSO KNOWN AS MRS. CARLTON L. SHMOCK, SR. *v.* JOHN M. KENNEDY III, BENJAMIN F. GREATHOUSE, TILLIE G. BROWN, ELIZABETH G. PROCTOR, ELSIE G. TALBOT, JESSIE GREATHOUSE AND CAROLYN G. MILLER.

(425 P.2d 304)

Decided March 13, 1967. Rehearing denied April 10, 1967.

PETER L. GARRETT, RANGER ROGERS, for plaintiffs in error.

CHARLES S. THOMAS, CLAYTON H. MORRISON, R. RUSSELL GRANT, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE following facts are necessary to understand the question presented by this writ of error:

Morrison K. Bailey died in 1930 leaving a last will and testament designating his wife, Katherine G. Bailey, as beneficiary of a testamentary trust created by the instrument. In that will she was given the testimentary power of appointment over the trust. The will provided that in the absence of her exercise of the power of appointment by a will of her own making the trust prop-

erty was to be distributed to the heirs of Mr. Bailey. The plaintiffs in error are the persons entitled to distribution of the trust if it is determined that Katherine G. Bailey died without having in existence a valid will in which the power of appointment has been exercised. We will refer to them as Morrison's heirs.

Katherine G. Bailey died in 1964. A will which had been executed in 1961 together with a codicil to the will executed in 1962 was offered for probate by those who are here as defendants in error. We will refer to them as the proponents. At the hearing for probate of the will and codicil, Morrison's heirs offered a copy of another will executed in 1963 which contains an express clause revoking all previous wills. It is not disputed that the original 1963 will was itself revoked by Katherine G. Bailey by her tearing and destroying it. A copy of the 1963 will, although not legally entitled to probate as a lost will, was nevertheless proven to have been duly executed in accordance with C.R.S. 1963, 153-5-2.

From the foregoing facts the trial court determined that the destruction of the 1963 will revived the 1961 will and the 1962 codicil thereto. The trial court made a *finding* that the 1963 will was revoked by destruction with the *intention of reviving* the 1961 will and 1962 codicil, and those instruments were admitted to probate. This writ of error challenges the correctness of the trial court's determination.

The question of whether the mutilation or destruction of a will containing therein an express revocation of all prior wills can effect a revival of the latest of all the previous wills (because it was not destroyed) is one of first impression in this jurisdiction. That there is a notable division of authority on this question can be gleaned from the annotations contained in 28 A.L.R. 911 and 162 A.L.R. 1072. The holdings of many of the jurisdictions have been affected by statutes. Colorado is one of the states having no express statute on revival.

Morrison's heirs, in seeking reversal of the trial court's

judgment, contend: (1) that it was error in law for the trial court to rule that the 1963 will could have no revoking effect unless this will itself was actually admitted to probate; (2) that the evidence is insufficient to support the findings of the trial court that Katherine G. Bailey intended to revive the 1961 will and 1962 codicil when she tore up and destroyed the 1963 will; (3) that the mere continued existence physically of a will that has been expressly revoked by one of the means provided in the statute cannot support an inference that the decedent, through some legal legerdemain, intends such will to be revived at some later date.

▮ We agree with Morrison's heirs and hold that the admission of the will and codicil to probate was erroneous.

One of the statutes involved in the problem presented herein is C.R.S. 1963, 153-5-3, which, pertinent to the question herein, provides:

"A will shall be revoked by, and only by, the subsequent marriage of the testator, or by burning, tearing or obliterating the will by the testator himself, or in his presence and by his direction and consent, or by some other will or codicil in writing, or other writing, declaring such revocation, *executed, declared* and *attested* as provided in section 153-5-2, * * *." (Emphasis added.)

▮ It is clear that if any of the acts called for by the above section are done with *animus revocandi* (that is with actual intention to revoke) the revocation becomes complete, and, according to the words of the statute, it becomes complete and effective "by some other will or codicil or other writing" at the time the revoking instrument is executed, declared and attested to as provided in section 153-5-2.

▮ There is nothing contained in the statute that states or from which there can be an implication that the revocation does not really take effect until the day when the will is admitted to probate. Competent evidence received by the court that there was a writing

executed, declared and attested to on a certain date, expressly revoking all previous wills, satisfies the language of the statute. Any other interpretation would give undue prominence and unwarranted preference to the actions of burning, tearing or obliterating (which effectively at the moment of action accomplishes a revocation) and would hold in abeyance the efficacy of the other portion of the statute.

Although not touching on the precise question involved herein, this court nevertheless in *Twilley v. Durkee*, 72 Colo. 444, 211 Pac. 668, made quite clear that one method of revocation is just as effective as another by the following language:

\* \* \* since the legislature provided two methods one by burning, etc., the other by a written will, and as the burning consumed the paper on which the earlier will was written, and with it the completed will itself, this language meant utter destruction and annihilation, whether revocation was effected by physical force, or by the execution of a later will by the testator. In the absence of a provision in the revoking statute to the contrary, courts will not assume that the legislature intended solely and only to effect an entire destruction by the first, and either a partial or entire destruction by the second, method."

The court also stated in the *Twilley* case that: "In the case of execution the courts *do not consider the intent of the testator,* but that of the legislature." (Emphasis added.) Stated differently, we believe that the legislature intended to and did set down definite guidelines as to the several methods of revocation and the proponents cannot by oral, self-serving testimony, undocumented and unattested to, stay or recall the effective language of the statute.

*Freeman v. Hart,* 61 Colo. 455, 158 Pac. 305, stated that while the burning, tearing or obliterating provisions of the statute were clear, the other provisions for rev-

ocation by subsequent will or other writing are entitled to the same efficacy.

"* * * Then the statute follows with further provision that a will may be revoked, that is set aside and annulled *in toto*, by some other will or codicil in writing declaring the same, that is declaring the total revocation and destruction thereof. * * *"

 Therefore, we now hold that each method allowed under the statute is equal to all others in terms of effectiveness when done with the appropriate concurrent intent. The fact that a previous will is not destroyed along with the making of a subsequent will containing an express revocation clause, does not effect the revival of the previous will. If the decedent intends to revive an existing previous will which has been revoked but undestroyed, that intention can only be manifest by declaration and attestation in compliance with C.R.S. 1963, 153-5-2, thus accomplishing a republication of the will.

The type of evidence received by the court and which it is contended supports the determination by the probate court that Katherine G. Bailey intended to revive the previous will and codicil, points up the danger of accepting such evidence as to Katherine G. Bailey's intention. The evidence was by the proponents, all of whom were beneficiaries under the instrument sought to be admitted to probate. Nowhere in the record is there any evidence that the decedent referred to the particular instrument or codicil or both and declared it to be her last will and testament. And there were no persons offered as witnesses to attest to such declaration or republication. The evidence received by the court was offered by the beneficiaries of the proffered will who, under the statute, could not take property under the will if they were attesting witnesses. An example of the evidence offered was by a principal beneficiary who merely testified that he knew the decedent definitely intended "to take care of him."

■ In an attempt to avert the passing of property of Katherine G. Bailey by virtue of intestacy, it is suggested in the briefs that the doctrine of "Dependent Relative Revocation" (Page on Wills, vol. 2, p. 446, § 2157) might have some application in this case so as to make the revocation of the 1963 will ineffective and entitle the copy to be probated. The doctrine cannot be applied in this case because of the Colorado statute on lost or destroyed wills. C.R.S. 1963, 153-5-28. The parties have conceded, and the evidence appears undisputed, that the decedent tore up the 1963 will. The statute unmistakably requires proof that such lost will or destroyed will was actually in existence at the time of the death of the testator. *In re Varnum's Estate*, 144 Colo. 422, 357 P.2d 370.

The judgment is reversed and the cause remanded with directions to vacate the order of probate of the questioned will and codicil and to distribute the trust property in the estate according to the last will and testament of Morrison K. Bailey, and the remainder in accordance with the laws of intestacy of this state.